MOORE, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*November 6 — November 25, 1890.*

RAILROADS: FIRES SET BY NEGLIGENCE: EVIDENCE. *(1, 2) Negligence: Court and jury. (3) Title to land. (4) Damages: Natural advantages and surroundings of land. (5) Opinions as to value.*

1. In an action against a railway company for the injury to a cranberry marsh caused by fires set by defendant's locomotives, evidence tending to show that the defendant had permitted refuse and inflammable materials to accumulate on its right of way and to remain there for years, and that fires had previously been set therein by passing locomotives, is *held* sufficient to warrant the jury in finding that the defendant was guilty of negligence.

2. There being some evidence as to the defendant's negligence in certain other particulars mentioned in the complaint, the trial court properly refused to instruct the jury that negligence in those respects had not been proved.

3. Evidence that the plaintiff was in the quiet and peaceable possession of all the lands for the injury to which the action was brought, using them in various ways in connection with the raising of cranberries thereon, was sufficient *prima facie* evidence of his title as against the defendant not claiming title.

4. Evidence of the natural advantages of the lands by reason of their situation with respect to the surrounding country, was admissible upon the question of damages.

5. The opinions of witnesses as to the value of the lands and the damage thereto, based on hypothetical statements of the testimony, were admissible, though such witnesses were not shown to be experts.

APPEAL from the Circuit Court for *Monroe* County.

Action to recover damages for the injury done to the plaintiff's cranberry marsh by fires alleged to have been started by the negligence of the defendant. The marsh embraced about 600 acres of land in Monroe county. The facts will sufficiently appear from the opinion. There was a verdict for the plaintiff, assessing his damages at $6,000,

and from the judgment entered thereon the defendant appealed.

For the appellant there were briefs by *John T. Fish*, attorney, and *Burton Hanson* and *C. W. Briggs*, of counsel, and oral argument by *Mr. Briggs* and *Mr. Hanson*. To the point that the refusal to give the instructions asked by the defendant was error which should work a reversal, they cited *Rogers v. Brightman*, 10 Wis. 55; *Chapman v. O. & M. R. R. Co.* 33 id. 629; *Campbell v. Campbell*, 54 id. 90; *Allen v. Perry*, 56 id. 178; *Watson v. M. & M. R. Co.* 57 id. 332; *Sailer v. Barnowsky*, 60 id. 169; *Jung v. Stevens Point*, 74 id. 547; *Battishill v. Humphreys*, 64 Mich. 494.

For the respondent there was a brief signed by *Olin & Butler*, of counsel, and oral argument by *J. M. Olin*.

ORTON, J. The main facts are as follows: The plaintiff claimed to own and was in the actual possession of certain lands in the county of Monroe, in this state, which were of great value for the cultivation and production of cranberries, and some portion was valuable for timber growing upon it. To make said lands more available for the cultivation of cranberries, the plaintiff had constructed thereon certain dams and bulk-heads and other erections, and dug ditches for supplying the same with the necessary water and regulating the same, some of which water came down upon said lands from lands adjoining belonging to other persons. Most of said land was well set with cranberry roots and vines capable of producing a large crop of cranberries. The defendant's railway ran along adjoining the said land, on which trains of locomotives and cars were regularly run. The defendant had allowed dry grass and rubbish of various kinds — old wood, ties, stumps, bark, and other inflammable matter — to accumulate on its right of way in the vicinity of said lands. In the years 1886 and 1887, fires were kindled by said locomotives in said inflam-

mable material on said right of way, which passed upon said lands of the plaintiff and consumed said cranberry roots and vines, bulk-heads, dams, and other constructions, and injured said timber, and caused great damage to the plaintiff.

This is not an uncommon case, nor at all complicated. It was very ably tried by distinguished counsel on both sides. The rulings of the court appear to have been clear and considerate, and the arguments of the learned counsel in this court were able and exhaustive and their briefs comprehensive and voluminous; but the exceptions on which error is predicated do not appear to be important or material. The points made upon the rulings of the court, in which the learned counsel of the appellant claim errors have been committed, will be considered in their order.

1. Refusing to direct a verdict for the defendant. There was testimony tending to prove that the refuse and inflammable materials above described had been permitted to remain on the right of way of the company for many years, and that fires had before been set in the same by passing locomotives. It was a very dry season, when great care ought to have been used to avoid or prevent the setting of such fires or prevent the running of the same on and over the adjoining cranberry marshes of the plaintiff so liable to be burned over. This evidence would seem to be sufficient to warrant the jury in finding the negligence of the defendant. The testimony tended to prove, also, that fires were set by the passing locomotives in said refuse on the right of way, and that such fires communicated with the marshes of the plaintiff, and that they were burned over, and the cranberry vines and roots were thereby destroyed, and the timber standing on some portions of said land was injured, and the bulk-heads, dams, and other constructions by which the necessary water was secured and held to flood said marshes were burned and injured, and that the plaintiff was thereby

injured to the extent found by the jury. There was also testimony showing that the plaintiff was in the full, quiet, and peaceable possession of said lands thereby injured. This was sufficient to entitle the plaintiff to recover in the action. It was not, therefore, error for the court to refuse to direct a verdict for the defendant. In this connection it is proper to say, once for all, that in our opinion the evidence was sufficient to justify the verdict.

2. The court erred in charging the jury. To sustain this point, the learned counsel of the appellant contends that the court ought to have given the instructions asked, that the negligence of the defendant in not keeping more men on the ground to extinguish fires, and in omitting to control and put out the fires alleged in the complaint, was not proved. The authorities cited by the learned counsel to this point are not applicable. There had been some evidence upon both of these questions, and it was no more the duty of the court to charge the jury that such negligence *had not* been proved than that it *had* been proved. These were facts for the jury to find had or had not been proved, and not the court. It would be a singular practice (or at least I am unacquainted with any such practice) for counsel to go through the case and ask the court to charge the jury that each alleged fact in respect to which there had been evidence had or had not been proved. The jury could have been asked to find a special verdict upon the question of negligence and upon what grounds they predicated such finding, and if any such ground had not been established by evidence it might be an error that would reverse the judgment. Or perhaps the plaintiff might have been asked to withdraw such allegations as not having been proved. But the above method of saving such an exception appears to be quite improper, and the learned counsel failed to cite any case to such effect.

3. The admission of improper testimony. Under this

head, the learned counsel complains: (1) That the court improperly allowed testimony in respect to the water-courses on adjoining lands, and the geographical features of such adjoining country favorable to the accumulation of water, which supplied the lands of the plaintiff with water by the use of said bulk-heads, dams, and other constructions necessary to the growth of cranberries thereon. It would seem too plain for argument that the plaintiff is entitled to all the natural advantages which his lands have by their situation in respect to the surrounding country, whether of watercourses, air, prospect, protection from storms, or of anything else. The surroundings of one's land may greatly affect its value, and these lands may have received thereby an actual pecuniary advantage and value in respect to their productiveness and use. It is claimed that the plaintiff has no control of these advantages, and that they may not be permanent. His lands have such advantages *now*, and that they may not *always* is purely speculative. (2) It is claimed that certain witnesses were allowed to testify and give an opinion as to the value of the plaintiff's lands and the damages thereto on hypothetical statements of the testimony, as if they were *experts*. This was certainly not improper. The opinion of witnesses as to values may be given without any previous examination as to the grounds of it or their competency to give it. Then, on cross-examination, they may be asked their reasons or as to their knowledge of the property; or their competency to give an opinion may be first shown. They are not experts having special skill and experience in a particular trade, business, or profession. They are common witnesses. The value of their opinions must depend upon their knowledge of the subject. I can see no reason why such knowledge may not be based upon an hypothetical statement of what has been already proved in the case as to the quality, condition, and situation of the property, as upon their own

actual observation. It is not certain but that their knowl-
edge so derived would be greater and more reliable because
all the particulars of it are given and before their minds
when their opinions are asked. No cases are cited to this
point as authority, and I know of none.

4. "The court erred in submitting to the jury the ques-
tion of damages to lands not owned by the plaintiff." The
learned counsel of the respondent attempted to prove title
to all of said lands, and the learned counsel of the appellant
claims that he failed to show title to at least a portion of
them. We shall not consider any of the numerous ques-
tions raised in respect to the plaintiff's title to any of these
lands, because his title was not necessary or material to the
case. The testimony was amply sufficient to show that the
plaintiff, at the time of the burning, was in the quiet and
peaceable possession of all of said lands, and that was *prima
facie* evidence of his title as against the defendant not as-
serting title, to cast the burden upon it to show, if it could,
that some other person was the owner. *Reed v. C., M. &
St. P. R. Co.* 71 Wis. 399. That was also a case of similar
burning over the cranberry marshes of the plaintiff, and by
the same defendant, and it was claimed that the plaintiff
had failed to prove his title to the lands. The possession
of the plaintiff in that case consisted in his having an agent
in the vicinity to look after the lands, with whom he con-
tracted to gather the cranberries therefrom during two
years, and the plaintiff received a share of them in 1885,
and they were burned over in 1886. This evidence of pos-
session was held sufficient to maintain the action. The
following authorities show that mere possession is sufficient
to sustain such an action, and they might be multiplied to
any extent: 2 Wat. Tresp. 346, § 909; 1 Washb. Real. Prop.
58, 343; 2 Greenl. Ev. § 555; *McNarra v. C. & N. W. R.
Co.* 41 Wis. 69; *Hungerford v. Redford,* 29 Wis. 345; *Field*

*v. Apple R. L. D. Co.* 67 Wis. 569; *Carl v. S. & F. du L. R. Co.* 46 Wis. 625; *Gerhardt v. Swaty,* 57 Wis. 24; *Boyington v. Squires,* 71 Wis. 276.

The testimony of the plaintiff and his witnesses tended to show that he had cranberry vines on nearly, if not quite, every forty acres of the land that he was cultivating; that he had picked profitable crops of berries from said lands for several years since 1882; that he used some of the land for cutting and raising timber and poles to be used in connection with the cranberry marshes; and that all of the land was useful to the cranberry business; and that he paid the taxes on the land. He made the bulk-heads, dams, and other constructions to hold the water to flood the marshes. He gave the business his own personal attention. In short, the testimony shows that the plaintiff had all the occupancy and possession of these lands as a body that they were capable of. It was marsh land, and therefore unfit for residence, but it produced a very valuable crop, and was cultivated for that purpose. In *Wilson v. Henry,* 35 Wis. 241, the land was mined near the surface for lead, yearly, by from two to ten miners, during the mining season, who leased it from the defendant. It was held sufficient proof of possession. In *Stephenson v. Wilson,* 37 Wis. 494, the land was mined by the pretended owner by himself, agents, and tenants, as continuously as the nature of the business and customs of the country permit or require. It was held to be adverse possession. If the land is constantly used and enjoyed for the only purpose for which it is possible and profitable, it is sufficient possession to be *prima facie* evidence of title. This land was cultivated for the only crop it could produce, and all of it was used subservient to that end, some of it for timber and some of it as a reservoir for water necessary or useful to the business. The plaintiff's possession was amply sufficient.

These are all the exceptions insisted upon in the brief of the appellant's counsel, and we find no error in the rulings of the court.

*By the Court.*— The judgment of the circuit court is affirmed.