[No. 3829.   Decided March 6, 1902.]

ROBERT ABRAMS, *Respondent,* v. SEATTLE AND MONTANA RAILWAY COMPANY *et al., Appellants.*

RAILROADS — NEGLIGENCE — SETTING OUT FIRE ON RIGHT OF WAY — DAMAGES TO PROPERTY OWNER — SUFFICIENCY OF EVIDENCE.

Although there was no direct evidence of a fire having been started by sparks or cinders falling ·from a passing engine upon the debris on the railroad right of way and communicating thence to plaintiff's adjoining premises, the jury is warranted in finding that the fire so originated, when the evidence showed that there was quite an accumulation of dry, inflammable debris upon the right of way; that the plaintiff's barn on the side toward the railroad was discovered to be on fire after the passage of defendant's train, and there had been no fire about the barn premises prior thereto; that at the same time the barn was burning the debris on the right of way was seen to be on fire; and that this debris had twice been set afire in the immediate vicinity of the barn by passing trains prior to the occasion upon which plaintiff's barn was burned.

SAME — CONDITION OF RIGHT OF WAY — EVIDENCE.

For the purpose of showing the condition of a railroad right of way on the question as to whether it contained inflammable material, evidence is admissible of other fires on the right of way in the vicinity of the one in controversy.

SAME — INSTRUCTIONS — ORIGIN OF FIRE.

In an action for damages for loss of property caused by fire being set out through defendant's negligence, in which one of the issues was whether there was material on the right of way capable of being ignited by sparks escaping from a passing engine, it was not error for the court to charge the jury to disregard the evidence of fires other than the one directly in issue in this case, "except for the purpose of showing the condition of the right of way adjacent to the barn at the time of the fire in question, if the same tends to show said condition."

SAME — DEGREE OF CARE.

In an action against a railway company for damages to plaintiff's property resulting from fire starting on its right of way, a charge to the jury that defendant was required to exercise such

care as "reasonably careful and prudent railway companies" generally exercise under circumstances entirely similar to all those which then surrounded the right of way adjoining or adjacent to plaintiff's barn, was not erroneous in making the degree of care such as "railway companies," instead of such as "persons," generally exercise under similar circumstances.

Appeal from Superior Court, King County.—Hon E. D. BENSON, Judge. Affirmed.

*Will H. Thompson,* for appellants.

*Struve, Allen, Hughes & McMicken* and *Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action for damages, brought to recover the value of a barn, some hay, and certain farming utensils and machinery destroyed by fire on the 10th day of October, 1896. The material allegations of the complaint are that on and prior to the date named the appellants were the owners and engaged in operating a certain railway running over and upon a right of way owned and controlled by them between the city of Seattle and the city of Fairhaven, in the state of Washington, and passing through the county of Skagit; that the respondent was the owner of a farm in Skagit county, through which the railway of the appellants extended, upon which, and immediately adjacent to the right of way, was situated a barn, in which was a large quantity of hay, and in and about which were certain farming utensils and machinery; that on and prior to the date named the appellants had carelessly and negligently permitted to accumulate and remain on the right of way adjacent to the barn of the respondent, and elsewhere on his premises, a large amount of dry grass, weeds, brush,

logs, lumber, and other refuse of a highly combustible nature, along and through which fires would readily be set out by passing locomotives, and from which it would spread to the property of the respondent; that on the date named the appellants, while operating a locomotive and train over and along the right of way, carelessly and negligently set fire to the combustible material above mentioned, and carelessly and negligently permitted the same to spread to the premises of the respondent, and ignite and burn the barn and other property mentioned, to his damage.   It is also alleged that the locomotive from which the fire escaped was defective in that it was not provided with proper spark arresters, and that it was negligently and carelessly operated.   The answer was in effect a general denial.   A trial by jury was had, resulting in a verdict and judgment for the respondent.

The assignments of error may be grouped under two general heads, namely:   (1) That the evidence is insufficient to justify the verdict; and (2) errors in the instructions of the court to the jury.

The trial judge took from the consideration of the jury all controversy as to the defective construction and negligent management of the engine from which the fire which caused the injury must necessarily have escaped if caused by an engine at all, holding that the evidence on these questions was insufficient to justify a finding that the engine was either defective in construction, or that it was carelessly or negligently operated.   The respondent was, therefore, left to maintain his case on the other acts of negligence alleged in the complaint, namely, that the appellants had negligently permitted their right of way to become covered with combustible debris, and that fire had been started in this debris by a passing engine, and

had been negligently permitted to spread from thence to
the respondent's premises and barn, causing the damages
complained of.    The contention on this branch of the
case is that the evidence fails to show that the fire was
started by a passing engine, and particularly, that there
is no evidence that it first caught in the debris, and spread
from thence to the barn.

In determining these questions the jury were privileged
to make up their verdict from that part of the evidence
most favorable to the contention of the respondent.    This
evidence tended to show that the railway of the appellants
at the time of the fire extended through the premises of
the respondent, running nearly north and south.    The
right of way was one hundred feet in width, in the cen-
ter of which the track was laid, elevated on an embank-
ment to a height above the general level of the surround-
ing country of about six feet.    The barn stood on the
east side of this right of way at nearly a right angle
thereto, the west end of the barn being within a foot of
the fence which marked its eastern boundary.    The barn
was sixty feet in width and one hundred and eighty feet
in length, and contained, besides some farming machin-
ery, about seven hundred and fifty tons of new hay.    The
surrounding country, particularly on the east side of the
railway grade, was practically level, and subject to oc-
casional overflow by water escaping from the Skagit riv-
er at periods of freshets in that stream when the waters
reached a height sufficient to overflow the dykes con-
structed along its banks.    In 1894 and 1895, and again
in February, 1896, floods had occurred, which overspread
the region east of the appellants' track to a depth of
about six feet, reaching nearly, if not quite, to top of the
railway grade.    This grade had operated to arrest the

debris floating on the water at the time of these floods, and much of it was deposited and left on the right of way by the subsidence of the water, and particularly in the space between the respondent's barn and the railway track and in its immediate vicinity. This debris had been suffered to remain there by the appellants, and during the summer season it had become dry and inflammable, so much so in fact that it was on several different occasions prior to the fire in question found to be on fire shortly after the passing of one of the appellants' trains; two of which fires, at least, occurred immediately prior to the fire in question, and in the immediate vicinity of respondent's barn. The schedule time for the appellants' north-bound train to pass this point was at 11:45 a. m. Its scheduled rate of speed was thirty miles per hour. On the day of the fire the train was a few minutes late, passing this place at 11:57 a. m., running at a speed of between forty and forty-five miles per hour. Between an hour and an hour and a half after this time, according to the testimony of the respondent's witnesses, smoke was seen arising out of the comb of the roof of the barn at a point near its west end, being the end nearest the railway track, followed shortly after by flames, which rapidly enveloped and consumed the entire building and its contents, the mass being in a smoldering condition at the time of the passage of the appellants' afternoon train at 3:15 p. m. A Mr. Bulson, the tenant of the respondent, was the first person to reach the building after the fire was discovered. He testified that he was about a half mile away when he discovered the smoke; that he immediately got into his conveyance, and drove rapidly to the building; that when he reached it only some rafters and the north wall of the building were left standing, the

west end being entirely consumed. He also testified that there was at this time fire burning on the appellants' right of way between its track and the west end of the building. This space, as well as a space for a considerable distance surrounding the barn, according to the respondent, who examined the premises on the next day, was entirely burned over before the fire was extinguished. There was no direct evidence that the fire was started by the appellants' engine, nor was it discovered burning upon the right of way previous to the discovery of the smoke arising from the roof of the barn. It was in evidence, however, that there was no fire upon the premises prior to the passage of the engine, and no other known source from which the fire could probably have originated.

From this record we have no hesitancy in saying that, to our minds, the evidence justifies the finding of the jury, not only that the fire which caused the injury escaped from the passing passenger engine, but that it caught first in the inflammable debris, and spread from thence to the respondent's barn. The respondent was not obligated to prove these facts by the direct evidence of an eye witness, nor by proofs which would leave them beyond the possibility of a doubt. It was sufficient if he established them by the proof of circumstances which lead reasonably to their inference, and which ordinarily satisfies an unprejudiced mind of their truth. That there was combustible material upon the right of way in the vicinity of the barn capable of being ignited from such sparks as must necessarily escape from the best constructed and most carefully managed engines is evidenced by the fact that fires had started in this same debris on previous occasions shortly after the passing of the appellants' engines. It is a matter of common knowl-

edge also that an engine constructed with proper spark arresters, when carefully managed, as this one was shown to be, though not incapable of emitting sparks at all, is not liable to throw sparks, even from the smokestack, for any considerable distance. The closeness of the meshes in the screens of the commonly used spark arresters prevent the escape of sparks of any considerable size, and such as do escape, being small, exhaust themselves quickly, and usually before reaching the ground. The distance of this barn from the passing engine was something like fifty feet. The debris covered the space between the engine and the barn. It would seem that it would not be an unnatural inference that sparks capable of igniting fires, escaping from the smokestack, would fall within that distance, rather than farther away, especially as it is not shown that there was any considerable wind blowing; and, if they escaped from the ash pan underneath the engine, they most certainly would. These considerations, when taken in connection with the evidence as to the part of the barn where the fire was first discovered, its appearance when the witness Bulson reached there, and the fact that other fires in this same vicinity had been found on the right of way shortly after the passage of the appellants' engines, lead rather to the conclusion that the fire originated on the right of way and spread to the barn than that it originated in the barn and spread to the right of way; sufficiently conclusive, at least, to warrant the jury in so finding. It is not a question of no evidence, but one of the weight and sufficiency of evidence; and this is usually, if not always, a question for the jury.

The courts of this country, in this class of cases, while adhering to the rule that some act of negligence on the part of the railroad company must be averred and proven

33—27 WASH.

in order to warrant a recovery, have been extremely liberal when called on to pass upon the evidence which a jury has found sufficient. This fact was stated by the supreme court of Colorado in *Union Pacific Ry. Co. v. De Busk,* 12 Colo. 294 (13 Am. St. Rep. 221, 20 Pac. 752, 3 L. R. A. 350) in the following language:

"From the multitude of decisions in cases of this kind it appears that the courts have been extremely liberal in allowing a recovery in favor of the party suffering damage caused by fire from passing trains. Even in cases where the proof of negligence is cast upon the plaintiff, slight circumstances have been held sufficient to sustain the burden. The origin of the fire has generally been held sufficiently established by inferences drawn from slight circumstantial evidence."

In *Gibbons v. Wisconsin Valley R. R. Co.,* 66 Wis. 161 (28 N. W. 170), the plaintiff sued to recover for the loss of certain lumber alleged to have been destroyed by fire escaping from the appellant's engine to combustible material negligently suffered to accumulate and remain on its right of way, and spreading from thence to the plaintiff's premises. There was no attempt to prove that there was any defect in the defendant's engines, or that there was any negligence in their management. The jury returned a verdict for the plaintiff, on which judgment was entered. Passing upon the sufficiency of the evidence to sustain the verdict, the court said:

"There was no direct evidence as to where or how the fire originated which destroyed the plaintiff's lumber. The plaintiff claims, and attempted to prove, that the fire started in a pile of ties near the track, and extended thence through the dry debris east to this lumber. There was no one about the station when the fire was first discovered, a short time after the passenger train had left

the place.    The counsel for the defendant insists that
the fire could not have been caused by sparks or live
coals escaping from either engine, because of the time
which elapsed after they left the place and before it was
discovered by any one. He says a spark or live coal
lighting on this combustible material would, according
to the evidence, at once, or in a very few moments, emit
smoke or blaze so that it would have been visible to the
persons present at the station after the passenger train
passed.    Therefore he insists the fire must have orig-
inated in some other way.    But, in the absence of all
proof that the fire was caused by some other agency,
the jury were justified, we think, in finding that it
was set by the defendant's engine.    From the nature of
things, no one could tell to a minute how long a spark
or live coal would smolder in this debris before it would
burst into a visible flame.    The witnesses naturally dis-
agree in their opinions or conjectures on this subject.
The most probable hypothesis, however, to account for the
fire is that it originated from sparks escaping from the
defendant's engines, and lodging in the dry, combustible
material on the right of way.    There was evidence that
engine No. 5 had set fires two or three days prior to and
the day after the fire which destroyed the plaintiff's lum-
ber; and it was for the jury to determine, upon the evi-
dence, whether this or the other engine did set the fire
on the 3d of May."

So, in *Gandy v. Chicago & Northwestern R. R. Co.,*
30 Iowa, 420 (6 Am. Rep. 682), speaking of the degree
of proof deemed sufficient in cases of this kind, the court
said:

"But, as in the nature of the case, the plaintiff must
labor under difficulties in making proof of the fact of
negligence, and as that fact itself is always a relative
one, it may be satisfactorily established by evidence of
circumstances, bearing more or less directly upon the
fact of negligence, which might not be satisfactory in
other cases, free from difficulty and open to clearer

proofs; and this, upon the general principles of evidence, which hold that to be sufficient or satisfactory which ordinarily satisfies an unprejudiced mind. 1 Greenl. on Ev., Sec. 2."

In *Norfolk & W. R. R. Co. v. Bohannon,* 85 Va. 293 (7 S. E. 236), the action was in tort to recover damages for a loss of property alleged to have been caused by fire escaping from passing trains. The declaration contained two counts, the first charged a loss because of negligence in the management of the engine, and the second charged a loss because of the company's negligence in permitting combustible material to accumulate on the right of way, which took fire, and communicated to the plaintiffs' premises. A verdict was returned finding for the plaintiffs upon both counts. On appeal the sufficiency of the evidence to sustain the verdict was challenged. Passing on this point, the court said:

"As to the first fire, which occurred in the day time, the testimony of Dr. W. H. Bramblett is, that he left Pulaski City soon after the east-bound mail train had passed that place; that, as he was leaving, he saw smoke coming up, from what he afterwards ascertained to be the plaintiffs' orchard; that when he got to the orchard he found the fire had started on the bank of a railroad cut, about the line of the company's and plaintiffs' land, about forty feet from the center of the railroad track, and had gone about seventy-five or eighty yards into the orchard; that the train had passed the point but a little while before he saw the smoke; and that the wind was from the southeast, and the fire spread northwest from the railroad through the orchard. This testimony establishes not only where the first fire was 'started,' to-wit, on the dividing line between the company's right of way and the plaintiffs' property, but it shows, also, the direction in which it was going, to-wit, away from the track. And this evidence, taken in connection with the testimony of another witness, E. T. Benes, who said that the

engines on this road sometimes threw sparks forty feet beyond the right of way, and the fact that an engine had just passed along, was ample evidence from which the jury might draw the inference that a spark or sparks from that engine had caused the fire. But the testimony of Dr. Bramblett proves more; it proves by exclusion that the combustible material on the company's right of way was not burned at all by this fire. When, therefore, we find, as the evidence shows was the case, that the dry grass and weeds were found partially burned on the company's right of way immediately after the second fire, it surely must be regarded as strong presumptive evidence that the second fire originated on the right of way, and that it was caused by hot cinders or sparks falling from the engine, that had just passed along, upon the dry grass and weeds with which the right of way was covered. Such being the plain and natural inference from the evidence in the case, and the damages not being so excessive, if at all, under the proofs, as to warrant the belief that the jury were actuated by passion or prejudice in rendering their verdict, we think it clear that it should not have been set aside, unless, indeed, there was some slip in the matter of instructions operating to the prejudice of the defendant."

See further, *Pittsburg, etc., Ry. Co. v. Indiana Horseshoe Co.,* 154 Ind. 322 (56 N. E. 766); *Missouri Pac. Ry. Co. v. Ayers,* 8 S. W. 538; *Terre Haute & Logansport R. R. Co. v. Walsh,* 11 Ind. App. 13 (38 N. E. 534); *Longabaugh v. Virginia City & Truckee R. R. Co.,* 9 Nev. 271; *Moore v. Chicago, Milwaukee & St. Paul Ry. Co.,* 78 Wis. 120 (47 N. W. 273); *Clark v. Ellithorp,* 9 Kan. App. 503 (59 Pac. 286); *Richmond v. McNeill,* 31 Ore. 342 (49 Pac. 879); Thompson, Commentaries on the Law of Negligence, § 2291.

The court gave to the jury the following instruction:

"The jury will disregard the evidence of fires other than the one directly in issue in this case, except for

the purpose of showing the condition of the right of way adjacent to the barn at the time of the fire in question, if the same tends to show said condition."

It is urged that this instruction is erroneous, because evidence of other fires on the right of way is inadmissible to show the condition of the right of way; that this is a matter equally within the knowledge of both parties, and hence does not fall within the rule which permits other fires to be shown as proof of defective construction and negligent management of an engine, which, from the necessities of the case, must be entirely within the knowledge of the railway company. There are cases which maintain this position, but we think the better rule is the other way. Whether there was material on the right of way capable of being ignited by sparks escaping from passing trains was one of the most hotly contested points in the case. Certainly evidence which tended to show that this material was found burning on other occasions shortly after the passage of the appellants' trains not only tended to show the condition of the right of way, but to disprove the contention that it was incapable of being ignited by passing engines. Nor do we think the inquiry was not, by this instruction, sufficiently narrowed. Its effect was to tell the jury to disregard all evidence relating to fires occurring elsewhere than adjacent to the barn, and must have been so understood by the jury.

Lastly, it is said that the court erred in its instruction as to the measure of care and prudence required of the appellants concerning their right of way. The rule laid down by the court was that they were required to exercise such care "as reasonably careful and prudent railway companies generally exercise under similar circumstances," adding thereto, "under circumstances en-

tirely similar to all these which then surrounded the right of way adjoining or adjacent to this barn." It is insisted that the trial court erred in adopting as the measure of care required of the appellants that degree of care which ordinarily prudent and cautious railway companies generally exercise under similar circumstances to those shown by the evidence, instead of that degree of care which ordinarily prudent and cautious persons generally exercise under similar circumstances. But without following counsel in his analysis of the distinctions between what is admitted to be a proper instruction and the one given by the court, we do not think they are so marked as to require a reversal of the case. Granting that a railway corporation is an entity separate and distinct from the persons who have authority to direct and control its conduct, still its conduct is, after all, the conduct of the persons who have this authority of direction and control; and to say that one railway company must exercise that degree of care which reasonable and prudent railway companies generally exercise is, in effect, but saying that they must exercise that degree of care which reasonable and prudent persons must exercise. Aside from this, this court has, tacitly at least, approved this form of instruction. See *Howe v. West Seattle Land & Imp. Co.,* 21 Wash. 594 (59 Pac. 495) ; *Bussanicz v. Myers,* 22 Wash. 369 (60 Pac. 1117.)

As we find no substantial error in the record, the judgment will stand affirmed.

REAVIS, C. J., and DUNBAR, ANDERS and MOUNT, JJ., concur.