[No. 5939. Decided March 1, 1906.]

JOSEPH IMESON et al., Appellants, v. THE TACOMA RAILWAY AND POWER COMPANY, Respondent.[1]

NEGLIGENCE — DESTRUCTION OF MILL BY FIRE — ORIGIN — FALL OF TROLLEY WIRE—EVIDENCE—SUFFICIENCY—NONSUIT. In an action to recover for the destruction of a mill by fire alleged to have originated from the falling of an electric trolley wire, there is no sufficient evidence as to the origin of the fire, and a nonsuit is proper, where it appears from the testimony of the plaintiff that he discovered the fire shortly after it started, and immediately crossed the railroad track where the wire was afterwards found upon the ground burning everything with which it came in contact, with a loud crackling noise, and it would have been impossible for the plaintiff to have passed the wire if it had been down at the time without having noticed it, and where the only evidence tracing the origin of the fire to the falling wire was circumstantial.

[1]Reported in 84 Pac. 624.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered May 17, 1905, in favor of the defendant upon granting a nonsuit, after a trial before the court without a jury, in an action to recover damages for the destruction of a mill by fire. Affirmed.

*John B. Van Dyke,* for appellants.

*B. S. Grosscup, A. G. Avery,* and *S. J. Pritchard,* for respondent. .

FULLERTON, J.—In 1904 the appellant Imeson owned and operated a shingle mill at Midland, in Pierce county. The respondent, at the same time, owned and operated an electric railway, the main line of which passed through Midland some one hundred feet north of the appellants's mill. From this main line a spur had been constructed over to a point some ten feet east of the northeast corner of the mill. The railway of the respondent, together with this spur, was equipped in the manner electric railways are usually equipped, and had a trolley wire suspended over its tracks to carry the electric current which furnished the motive power. The mill was burned on the night of June 2, 1904. It was Imeson's conception that the fire was caused by the falling of the trolley wire which had been suspended over the spur track, and in making his claim to the insurance company in which he had the property insured he gave this as his belief as to the origin of the fire. On paying the loss the insurance company took a subrogation receipt, and this action is prosecuted by Imeson and the insurance company jointly, to recover the loss suffered. The case was tried below without a jury, and ended in a judgment of nonsuit at the conclusion of the plaintiffs' case. This appeal is from that judgment.

Two questions are presented by the record, namely: did the falling of the trolley wire start the fire, and if so, did it fall because of the negligence of the respondent? The conclusion

we have reached on the first question makes it unnecessary to investigate the second. That the fire was not started by the trolley wire, it seems to us is a necessary deduction from Imeson's testimony. He was acting as watchman on the night of the fire. He testifies that shortly before ten o'clock of that night he, in company with two other men, made the rounds of the mill, and returned to his cabin, which was some eighty feet distant northerly from the mill; that the men then went to their homes, while he went into his cabin; that about twenty minutes later he stepped out of his cabin to take another look, and had advanced some twenty feet towards the mill when he discovered a fire near its northeast corner. The blaze, he says, was about three feet high, was burning in highly inflamable material, and had evidently just started; that he went at once to the back of the mill for the purpose of starting the pumps, and in doing so crossed the spur track directly in front of the mill and at a place where the trolley wire was afterwards found on the ground. He did not see the trolley wire. It was discovered lying across the path he took some minutes later by other persons who came to the fire, who described it as writhing and twisting on the ground, burning everything with which it came in contract, and making a crackling noise not unlike the sound of firecrackers; in fact, it appeared so dangerous that it was considered unsafe even to throw a stream of water on the fire until it was gotten out of the way. It hardly seems possible that Imeson could have passed over the wire and not have noticed it—in fact he admits as much himself—yet he must have passed over it if it was down at that time. On the other hand, if it was not down at that time it could not have been the origin of the fire. The fact that he did not discover it has, to our mind, almost the force of positive evidence that it was not down, and could not, for that reason, have been the origin of the fire.

The evidence supporting the appellants' view, moreover, is wholly circumstantial. It rests chiefly on the fact that the

wire was discovered to be down so soon after the fire started, and evidence tending to show that it had been insecurely fastened in place originally, and had been recently subjected to severe strains. This would have been more potent had it been shown that there was no other source from which the fire could have originated. But this was a steam mill having its furnaces and engines in the mill proper, and on that day the furnaces had been fired for some special purpose, although the mill seems not to have been in active operation.

Therefore, without specially reviewing the evidence, we are of the opinion that it was insufficient to make a *prima facie* case against the respondent. It was incumbent on the appellants to prove their case with reasonable certainty, and it was not doing this to show a cause from which the fire might have originated, without showing further that it could have originated from no other cause, or that it was more probable that it originated from the cause shown than from any other.

The judgment is affirmed.

MOUNT, C. J., HADLEY, ROOT, CROW, and DUNBAR, JJ., concur.