[No. 12150.  Department Two.  March 13, 1915.]

## S. Yamamoto, *Respondent*, v. Puget Sound Lumber Company, *Appellant*.[1]

APPEAL—REVIEW—VERDICT. A verdict on sharply conflicting evidence, upon which it can only be said the jury might well have found the other way, is conclusive on appeal.

NEGLIGENCE—FIRES—EVIDENCE—SUFFICIENCY. Liability for a fire is sustained, where there was direct evidence tracing the fire from the open burner of a mill, maintained by the defendant, to the buildings of the plaintiff.

TRIAL—GENERAL VERDICT—SEVERAL CAUSES OF ACTION. In an action upon several assigned causes of action, a general verdict in a lump sum may be returned, under Rem. & Bal. Code, §§ 362, 364, where all the causes are submitted to the jury.

ASSIGNMENTS — CONSIDERATION — ACTION BY ASSIGNEE. Proof of consideration for an express assignment in writing is not necessary, and the assignee being vested with legal title, may sue in his own name, although the assignors retained an interest, under Rem. & Bal. Code, § 191.

ASSIGNMENTS — EXECUTION — EVIDENCE — SUFFICIENCY. There is sufficient evidence of proofs of the assignment of losses of several assignors, where the names of the assignors appear on the written assignment introduced in evidence, and they testified that they made such assignment; or where one assignor was allowed to testify, without objection, to the goods lost by him, included in the list, and no objection was made to the assignment for want of authentication.

PLEADINGS—AMENDMENTS—FAILURE TO OBJECT TO EVIDENCE. Where a mistake was made in the name of an assignor given as T. Tamari, and A. Tamari testified without objection that he was the person intended and who sustained the loss, the pleading will be deemed amended.

NEGLIGENCE — FIRES — EVIDENCE OF OTHER FIRES—ADMISSIBILITY. In an action for loss by fire originating from an open burner of a mill, evidence that other similar fires were set out in the vicinity by the burner is admissible, and such evidence is sufficiently definite if a witness testifies that he saw such fires originate from sparks from the burner.

SAME—FIRES—KNOWLEDGE OF OWNER. In an action for loss by fire, set out by an open burner of a mill, evidence tending to show

[1]Reported in 146 Pac. 861.

knowledge by the owner of the mill that the burner was setting out fires is admissible, even if remote, its weight being for the jury.

APPEAL—REVIEW—HARMLESS ERROR. Evidence having no bearing on the issues of the case is harmless.

TRIAL — INSTRUCTIONS — "PREPONDERANCE" OF EVIDENCE. An instruction that by the preponderance of the evidence is not meant the greater number of witnesses, but that evidence which, impartially considered, produces the strongest impression and has the greatest weight and is more convincing as to its truth than the testimony opposed to it, is proper.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial for newly discovered evidence will not be granted where it was only cumulative, and due diligence was not made to produce it at the trial.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered December 29, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*F. D. Oakley*, for appellant.
*Hudson, Holt & Harmon*, for respondent.

FULLERTON, J.—On March 19, 1913, fire destroyed a Japanese lodging house, situated in the city of Tacoma, and with it certain personal property of the Japanese tenants and their several lodgers. The individuals suffering the losses assigned their claims for damages to S. Yamamoto, who brought the present action against the Puget Sound Lumber Company to recover the value of the property destroyed. In his complaint the plaintiff alleged that the fire which destroyed the property escaped from an open burner which the lumber company carelessly and negligently maintained at its sawmill. The amount of the demand in the complaint was $6,918.48. The jury returned a general verdict in favor of the assignee for $2,350. From a judgment entered on the verdict, the lumber company appeals.

The appellant first assigns that the court erred in refusing to grant its motion for nonsuit, made at the conclusion of the

plaintiff's evidence in chief, and later, in refusing to sustain its motion for judgment notwithstanding the verdict; the chief contention being that the evidence was insufficient to justify the conclusion that the fire originated from the open burner. But without specially reviewing the record, we think the most that can be said is, there was a sharp conflict in the evidence on the question, and that the jury could well have found for the other side. Under these circumstances, the verdict is conclusive on us here. It is the peculiar province of the jury to judge of the weight and sufficiency of the evidence, and their findings on conflicting evidence are conclusive on the appellate court, even though that court may be convinced that the evidence preponderates the other way.

The case before us differs from the case of *Imeson v. Tacoma R. & P. Co.*, 42 Wash. 74, 84 Pac. 624, cited and relied upon by the appellant. In the first place, the case cited, having been tried by the court below sitting without a jury, was reviewable in this court on its facts; and in the second place, there was no direct evidence that the fire concerning the losses for which recovery was sought originated from a cause for which the defendant would have been liable; in fact the court construed the evidence as pointing rather to the contrary conclusion. Here there was direct evidence tracing the fire from the open burner maintained by the defendant to the burned building which contained the articles of personal property destroyed in its burning.

The appellant's next contention is that the verdict is void because of its generality; that there should have been a separate verdict upon each cause of action. But the rule is not so broad as the objection indicates. Under our practice, a general verdict in a lump sum may be properly returned on a complaint containing several causes of action, all of which are submitted for the consideration of the jury. Rem. & Bal. Code, §§ 362, 364 (P. C. 81 §§ 631, 635) ; *Lebovitz v. Cogswell*, 83 Wash. 174, 145 Pac. 212. It is undoubtedly the rule that a general verdict for one entire sum covering two or

more independent causes of action is properly set aside in whole, if it be found to be erroneous as to one or more of the causes of action, and these are incapable of separation from the general verdict. *Chase v. Knabel,* 46 Wash. 484, 90 Pac. 642, 12 L. R. A. (N. S.) 1155; *Auwarter v. Kroll,* 79 Wash. 179, 140 Pac. 326. But this is the extent of the rule. As we said in *Lebovitz v. Cogswell:*

"It could make no difference to the appellants whether the verdicts were several, or whether there was a joint verdict in favor of the respondents for the aggregate amount of the . . . verdicts."

It is contended, however, that certain of the causes of action were not proven; that there was no proof that the claims of H. Ando, T. Doho, or J. Terao had been assigned to the plaintiff; that the complaint alleged that certain of the property destroyed was the property of T. Tamari, whereas the proofs showed that it was in fact the property of A. Tamari; that on certain of the claims, particularly those of T. Hashimoto and A. Tamari, there were no proofs of value at the time they were destroyed; and that no consideration was shown for any of the assignments.

As to the objection of a want of consideration for the assignments, there was no need of any express consideration. The assignments being in writing, the assignee became vested with the legal title to the claims assigned, and could maintain an action thereon in his own name, notwithstanding each assignor may have retained an interest in his particular claim. Rem. & Bal. Code, § 191 (P. C. 81 § 31); *Von Tobel v. Stetson & Post Mill Co.,* 32 Wash. 683, 73 Pac. 788; *Grant v. Walsh,* 36 Wash. 190, 78 Pac. 786.

As to the contention that there were no proofs of the assignments of the claims of H. Ando, T. Doho and J. Terao to the respondent, we find that the names of all of these persons appear on the written assignment introduced in evidence, and that T. Doho and J. Terao severally testified that he had made such an assignment of his claim.

H. Ando, seems not to have so testified, but he was permitted, without objection, to testify to the goods lost by him in the fire and as to their value, and a list of his goods is included in the typewritten list submitted to the jury by stipulation of the counsel as an exhibit to aid their memory when making up their verdict.    More than this, the assignment itself was put in evidence without objection on the ground that it had not been properly authenticated.    Under these circumstances, the court and jury had a right to assume that the loss of this particular claimant was a subject for consideration, and conceding there was a default in the technical proofs, we think the appellant now estopped to claim an advantage from it. So as to the objection to the mistake in the name of A. Tamari.    A. Tamari appeared in person and testified to losses suffered by him, and to the fact that he had assigned his claim for the same to the respondent; and this, in so far as we can discover, without objection on the ground that he was not a person named in the complaint as suffering losses from the fire.    His list corresponds with the list alleged to have been lost by T. Tamari.    We think it conclusive, therefore, that A. Tamari was the person intended to be named by the designation T. Tamari; and this being so, the defect in the pleading was an amendable defect, and must be treated as amended at this stage of the proceedings.    *Murray v. Meade*, 5 Wash. 693, 32 Pac. 780.

With reference to the proofs of value, we think there was evidence on each of the claims that the court permitted to go to the jury sufficient to carry the claim to the jury.    True, in some of them the estimates of value were not very definite, being based upon the original cost price and an estimate of the amount of wear, but this is some evidence of value, and that the jury were not seriously misled is evidenced by the very material reductions they made in the witnesses' estimates.

It is claimed that the court erred in permitting testimony to be introduced as to other fires occurring in the vicinity of the lodging house, without proof of the fact that the fires so

occurring originated from the appellant's burner.   But we think, in each of the instances pointed out in the record, there was evidence tending to prove the fact thought to be omitted.    Take, for example, the following from the evidence of the witness Blomquist, who testified to other fires in the vicinity which are thought not traceable to the burner:

"Q.  Did you ever see the grass and stumps up there on that hill around the Japanese boarding house or in that vicinity set on fire by sparks and cinders from the Puget Sound Lumber Company's plant?   A.  It happens nearly every summer when it is dry, fire every summer when it is dry around.   Before the Japanese house was built, it did not seem to be so much danger, it was not cut out by the bank, there was underbrush and tall trees on the hillside, that made a protection from the burner, drew that from everything, when the protection cut out from the bank the air catch that, any wind, and pull it over and it is more danger than it was.   Q.  In other words, they cut down the bank that had those trees and things on it, is that what you mean?   A.  Yes, after the trees and underbrush draws out— Q.  Had you observed that burner at night when the wind was from the north, whether there were any sparks and what became of them?   A.  In still weather when the wind is not blowing, then at night they go up, up, up toward heaven; a little more breeze carry over the roof and everything; a stronger wind they carry them lower and catch stumps and things.   Q.  Where?   A.  Right in wherever the cinders struck, according to the direction of the wind.   Q. If the wind blows from the south, what happens?   A.  From the south it will carry the cinders directly northwest or to the sea.   .   .   .   Q.  Have you noticed the grass up there around that house and around in that vicinity take fire when the cinders were there where you could see them?   Mr. Oakley:  We object to that as incompetent, irrelevant and immaterial.   The Court:  The objection will be overruled. Exception allowed defendant.   A.  Yes, sir.   Q.  Did you ever put out any of these fires or see any others do it?   A. Yes, sir.   Q.  Do you know where the wind was coming from —in what direction the wind was blowing at that time?   A. It was blowing in the direction from over the burner.   Q.  It was blowing in the direction from over the burner?   A.  Yes,

from the burner, northwest and south; I couldn't say, since I don't have the compass exactly.  Q.  Is there anything else around there that throws cinders and fire up on that hill except the burner of the Puget Sound Lumber Company?  A. No, sir."

Clearly there was here evidence that the other fires concerning which the witness testified were caused by the burner. The evidence of the other witnesses complained of was equally definite, and we think the testimony within the rule.  *Abrams v. Seattle & Montana R. Co.*, 27 Wash. 507, 68 Pac. 78; *Noland v. Great Northern R. Co.*, 31 Wash. 430, 71 Pac. 1098; *Fireman's Fund Ins. Co. v. Oregon R. & Nav. Co.*, 58 Wash. 332, 108 Pac. 770.

We find nothing inadmissible in the testimony of M. Shimochi or the photographer Lee.  The testimony of the first, thought to be objectionable, tended to show knowledge on the part of the appellant that the appellant knew its burners were causing fires on the hill near the vicinity of the burned building.  Its tendency in that direction may have been somewhat remote, but it was nevertheless admissible; its weight being for the jury.  The testimony of Lee was harmless at best.  The fact that he saw a fire burning in a stump in the vicinity of the burned building, when taking photographs of the surroundings of the mill for use in the trial of the present case, may have had no bearing upon any of the issues, but clearly it was harmless.

In its charge to the jury the court gave the following:

"By preponderance of the evidence, the court does not mean the greater number of witnesses on a material point, but rather the weight of the evidence—that evidence which, when fairly, fully and impartially considered by the jury, produces the stronger impression and has the greatest weight with you, and is more convincing as to its truth, when contrasted or weighed against the evidence in opposition thereto."

This instruction was proper.  It does not, as the appellant argues, fall within the instruction considered in *Gilmore*

14—84 WASH.

*v. Seattle & Renton R. Co.*, 29 Wash. 150, 69 Pac. 743. In that case it was held that the court invaded the province of the jury by telling them that they should regard one circumstance as more controlling than another, whereas it was within the exclusive province of the jury to say which of the circumstances they would regard as the more controlling. Moreover, it was distinctly stated in the opinion that the court could properly instruct the jury that, in determining the preponderance of the evidence, they need not be controlled by the mere circumstance that a greater number of witnesses had testified upon the one side than upon the other. The instruction here questioned does no more than this.

We find no merit in the exceptions to other instructions given, nor did the court err in refusing to grant a new trial on the ground of newly discovered evidence. The instructions complained of we shall not set forth at length nor further discuss, as we think them a plain statement of the law applicable to the case. The newly discovered evidence was but cumulative of that introduced by the appellant. Furthermore, it was learned by the appellant prior to the trial that the witnesses subsequently discovered were in the vicinity of the lodging house at the time of the fire. It was therefore bound to exercise due diligence in its attempt to procure their presence at the trial, and the required diligence, we think, was not exercised.

The judgment is affirmed.

CROW, MOUNT, MAIN, and ELLIS, JJ., concur.