[No. 17940. Department Two. December 27, 1923.]

## WALTER B. HINCKLEY, *Respondent,* v. SHELL COMPANY OF CALIFORNIA, *Appellant.*[1]

NEGLIGENCE (3, 38)—FIRES—CAUSE OF FIRES—EVIDENCE—SUFFI-CIENCY. Whether sparks from defendant's smokestack fell upon plaintiff's roof and caused fires, is for the jury, where there was evidence that many large sparks from the smokestack fell upon plaintiff's premises, there was no other smokestack in the neighborhood, the fires on the roof could not have started from a fire in the house or from electric wiring, and defendant's spark arrester was often left open, and the meshes were larger than the law prescribed.

SAME (3)—NEGLIGENCE—EVIDENCE—SUFFICIENCY. Negligence in the maintenance of a smokestack is shown by the fact that the spark arrester was sometimes left open and sparks would escape, and that the law required quarter inch meshes, but sparks were thrown out larger than a quarter of an inch in size.

EVIDENCE (194)—NEGLIGENCE (35)—FIRES—EVIDENCE—ADMISSI-BILITY. Upon an issue as to whether sparks from defendant's smokestack caused fires on plaintiff's roof, expert city firemen who examined the premises after the fires may state, if they can, where the fires started, and that, in their opinion, the electric wiring in the house had nothing to do with the fires.

Appeal from a judgment of the superior court for King county, Hall, J., entered January 20, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to property from fire. Affirmed.

*Tucker & Hyland, Ford Q. Elvidge,* and *Mary H. Alvord,* for appellant.

*Ogden & Clarke,* for respondent.

BRIDGES, J.—The respondent charged that the appellant had so negligently maintained and operated its boiler and smokestack as to set fire to his dwelling on two different occasions; once in May, 1920, and again

[1]Reported in 221 Pac. 594.

in May, 1921, each fire doing material damage. There was a verdict of the jury in favor of the respondent, and from the judgment entered thereon, this appeal is taken.

From the testimony, the jury might have concluded the facts to be these; that the appellant had its office building and heating plant near Westlake and Dexter avenues, in the city of Seattle; that the smokestack from its boiler room was elevated some twenty-five feet above the roof of the building; that it used coal for heating purposes; that there had been placed on top of the smokestack a spark arrester with one-quarter inch meshes; that such a mesh complied with the city of Seattle ordinance and was probably sufficient for the purpose; that on top of the spark arrester was a metal cap which could be partially or entirely opened by means of a wire leading from it down to the boiler room; that, when this metal cap was raised, sparks of any kind might escape; that the respondent's dwelling is some thirty or forty feet north of the boiler room; that, during a period extending from the time before the first fire until after the second fire, many sparks were seen to come from appellant's smokestack, and often these were so numerous as that those occupying the dwelling were required to sweep them from their porch, and they would also fall in the yard and on the sidewalk; that many of the sparks were from one-half to three quarters of an inch in length, or size; that live sparks, or brands, on some occasions were seen to be carried over the dwelling; that, on the day each fire occurred, the wind was blowing from the south towards the north; that is, from appellant's plant towards respondent's house; that each fire was started on that portion of the roof which was nearest the appellant's heating plant; that one of the fires started in the gutter of the roof and the other one higher up

thereon; that there were no other smokestacks in the immediate neighborhood and standing to the south of the dwelling from which sparks came or were likely to come; that the metal cap on top of the spark arrester was on certain occasions seen to be open; that there was no furnace in the dwelling, and, at the times here involved, no fire therein except a low one in one of the stoves on the ground floor; that the fires started at places on the roof distant from any electric wiring. There was no direct or positive testimony showing that the sparks from appellant's furnace actually started the fire, nor was there any testimony directly showing that the meshes of the spark arrester were greater in size than one-quarter inch. Of course, much of the testimony tending to show these facts was disputed by appellant's witnesses.

We are unable to agree with the appellant's contention that the evidence was insufficient to justify the case being submitted to the jury or to support its verdict because, as it argues, it did not point to appellant as the cause of the fires. It may be true that the mere fact that sparks came, from time to time, from appellant's smokestack would be insufficient. But the law does not impose upon the respondent the duty of presenting direct and positive testimony concerning the source of the fire. In the case of *Abrams v. Seattle & Montana R. Co.*, 27 Wash. 507, 68 Pac. 78, speaking to a similar proposition, we said:

"The respondent was not obliged to prove these facts [the cause of the fire] by the direct evidence of an eye witness, nor by proof which would leave them beyond the possibility of a doubt. It was sufficient if he established them by proof of circumstances which lead reasonably to their inference and which ordinarily satisfies an unprejudiced mind of their truth."

The evidence in this case easily brings it within the rule announced in that case. The fact that large sparks were often seen coming from this smokestack; that they lit upon or flew over the house of the respondent; that, at the time of each fire, the wind was in such direction as would naturally carry the sparks from the appellant's premises to those of the respondent; that both fires occurred on the roof and on that portion thereof which was nearest the appellant's plant, and that there was no other known or reasonably supposed cause for the fire; these things and others shown make a case of sufficient certainty as to the cause of the fire to entitle the matter to be determined by the jury.

Nor can we agree with appellant's contention that there was no proof of negligence on its part. There was ample testimony to show that there was a spark arrester on this smokestack through which, as it was built, sparks larger than one-quarter of an inch in size could not escape. The fact that sparks of much larger size escaped (if the testimony of respondent's witnesses is to be believed) shows quite conclusively that there was something wrong either with the meshes of the spark arrester or in the operation of the plant. There was also testimony to the effect that on some occasions the metal cap on top of the smokestack was seen to be open, and that when it was open sparks could escape as though there were no spark arrester whatsoever.

Instruction ten, of which complaint is made, correctly stated the law and is in accord with the views which we have hereinbefore expressed.

What we have already said sufficiently answers appellant's contention that the respondent's proof did not eliminate other probable causes of the fire.

Complaint is made that Mr. Lang, a witness for the respondent, was permitted to answer the following

question: "Now, then, Mr. Lang, assuming that the wind was from the south or southwest on the day of the fire, and assuming that sparks were blown from the stack of the Shell company's plant, from your examination of the building there the day after the fire, based upon your experience as a fireman that you have testified to, I wish you would give us your opinion as to where that fire started." Like objections were made to similar questions propounded to another witness. The testimony shows that these two witnesses were expert firemen and had been connected with the Seattle fire department for a long while. They testified that, after each of the fires, they examined the premises and from such examination could tell where the fire started. It is questionable whether these witnesses can be said to have testified as experts when they merely stated upon what part of the roof the fire started. But if they testified as experts there is no error. They did not testify as to the source of the fire, which was the ultimate question for the jury.

It is also claimed that these or other expert witnesses were erroneously permitted to testify that, in their opinion, the electric wiring within the house had nothing to do with either of the fires. What we have said concerning the last point is applicable here. These witnesses saw where the fires started and examined where the electric wires were and stated that neither fire started in proximity to the wiring.

The case seems to have been fairly presented to the jury. The judgment is affirmed.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.