[No. 18143. Department Two. January 23, 1924.]

BLANCHE SCHWEITZER *et al.,* Respondents, v.
WEYERHAEUSER TIMBER COMPANY *et al.,*
*Appellants.*[1]

APPEAL (418)—REVIEW—FINDINGS—ADVISORY VERDICT. Where a
jury's answers to special interrogatories was treated as advisory, the
case will be heard de novo on appeal.

NEGLIGENCE (3, 33)—FIRES—DEFECTIVE SPARK ARRESTER—BURDEN
OF PROOF. The fact that a spark from a burner caused a fire is not
sufficient to establish liability, the burden of proof of negligence
being on the plaintiff.

SAME (3, 38)—FIRES—NEGLIGENCE—EVIDENCE—SUFFICIENCY. A
finding of negligence in the maintenance of a spark arrester for a
refuse burner is sustained by satisfactory proof of the escape of
burning brands of such large size that the burner must have been
out of repair, notwithstanding evidence that it had been recently
installed and had no holes permitting the escape of such large
brands.

APPEAL (389)—REVIEW—AMENDMENTS. In an action for the loss
of a building alleged to be of the value of $1,800, tried to the court,
the complaint will be deemed amended on appeal to conform to
proof that its value was $2,000.

PARTIES (2)—REAL PARTY IN INTEREST—PARTIES INSURED AGAINST
LOSS. In an action for the loss of a house, caused by a fire negli-
gently set out by defendant, plaintiff's right of recovery is not
affected by the fact that he had received insurance on account of
the loss.

Appeal from a judgment of the superior court for
Snohomish county, Brawley, J., entered December 8,
1922, in favor of the plaintiffs, in an action for dam-
ages from fire, tried to the court and a jury. Affirmed.

*Cooley, Horan & Mulvihill,* for appellants.

*Joseph H. Smith* and *Fred G. Clarke,* for respond-
ents.

[1]Reported in 222 Pac. 460.

BRIDGES, J.—Plaintiffs sought by this action to recover damages from defendant resulting to their dwelling and its contents because of the negligent maintenance and operation of a refuse burner. The items of damages sought to be recovered were to the house on account of partial destruction by fire; to the household furniture consequent upon the fire, and to the drains and sewers. Plaintiffs also sought injunctive relief. A jury gave answers to special interrogatories submitted to it. The court treated the verdict as advisory. Under these circumstances, the case is heard here *de novo.*

There was much testimony to support the following facts: The defendant owns and operates, in the city of Everett, a large sawmill, and in its operation accumulates a great amount of refuse and sawdust which must be destroyed. For this purpose it constructed and has used a large refuse burner. The outside of the burner is some kind of metal and the inside fire bricks. It is about 125 or 130 feet high. At or near the bottom are several iron doors which are used for the purpose of creating a draft, and near the top of the burner are additional door drafts. These doors may be opened or closed from the ground. The burner is a modern one and is likely as good as can be built for the purpose of burning refuse and sawdust. Near the top is a large spark arrester with one-quarter inch meshes. Ordinarily an arrester will keep in fair repair some eighteen months. A new one had been installed a few months before the fire hereinafter mentioned. The mill is located in the manufacturing district of the city. Close to the plant is a hill, from 100 to 200 feet in elevation, and on it is located plaintiffs' dwelling. It is from 250 to 500 feet from the burner, the testimony on this point not being very specific. In the latter part

of April, 1922, the house was partially destroyed because of live sparks or burning brands coming from defendant's burner.

On the day of the fire, there was a stiff wind blowing from the direction of the burner towards the house. During many months, and even years, prior to this fire, many large and small sparks and burning brands came from the burner. Half-burnt sawdust and cinders accumulated on the ground near the plaintiffs' home and those of other persons in the neighborhood. Often these sparks and burning material would light upon the plaintiffs' dwelling, and many of them would be carried beyond that point. Immediately after the fire had been extinguished, and while two persons were covering the roof with tarpaulin, live sparks lit upon the roof and on the tarpaulin. A number of witnesses residing in the community testified that, on the day of the fire, many sparks and burning brands came from the burner, the larger ones being a half-inch to an inch in size. Most of the drafts of the burner were open. Plaintiffs and their neighbors had been troubled with live sparks and ignited pieces of wood on other occasions. Indeed, there can be but little doubt that the fire in question was caused by sparks and burning particles of wood coming from defendants' burner.

In answer to special interrogatories, the jury stated that the cause of the fire to plaintiffs' premises was live sparks or cinders coming from the burner; that the burner is of the same type and character as is generally used in similar manufacturing plants; that no more efficient burner is known; that, on the day of the fire, it was being operated in a careful and prudent manner, but that on that date it was not maintained in good repair. The jury found damages to the house on account of the fire in the sum of $2,000; damage to

the personal property in the building, caused by fire and water, $198; and damage to the drains and sewers in the sum of $193.63. The trial court adopted the findings of the jury on the question of the amount of damages and entered judgment for these amounts, but refused any injunctive or other relief.

Appellants' chief argument is that the judgment is against the great preponderance of the evidence. They argue that their plant was located in the manufacturing district of the city; that, because of the nature of the work, it was necessary that the accumulated sawdust and slabs should be burned; that the burner maintained by them was the best known and was generally used throughout the west, and that it is impossible to maintain and operate such a burner without some sparks emanating therefrom. They conclude from these alleged facts that to sustain a judgment against them would be either to destroy their business or to make them insurers.

It is held by most of the authorities that the mere fact that a fire is caused by a spark or cinder coming from a burner or smokestack is not alone sufficient to establish liability; that the defendant is not an insurer; that its only duty is to exercise ordinary care in the construction, maintenance and operation of its burner or smokestack. The question is always one of negligence, and the burden of proof is on the plaintiff. *American Ice Co. v. South Gardiner Lumber Co.*, 107 Me. 494, 79 Atl. 6, 32 L. R. A. (N. S.) 1003; *Day v. Akeley Lumber Co.*, 23 L. R. A. 513, 11 R. C. L. 955; *O'Day v. Shouvlin*, 104 Ohio St. 519, 136 N. E. 289, 25 A. L. R. 980; *Hinckley v. Shell Company of California*, 127 Wash. 630, 221 Pac. 594.

If the facts were as appellants assume them to be— that the burner was of the best kind and that it had a

proper and suitable spark arrester and was properly operated—we would doubtless find that the respondents had failed to show negligence. But we do not so read the testimony. As before stated, many witnesses testified that on the day of the fire, large burning particles of wood fell on the respondents' house and in the neighborhood, some of the sparks and burning brands being from one-half of an inch to more than an inch in size. Appellants' witnesses admitted that, if burning brands of such size escaped from the burner, the spark arrester must have been out of repair, because no sparks larger than a quarter of an inch could otherwise have escaped. While the testimony concerning the number and size of the burning brands escaping from the burner is exceedingly strong and satisfactory, the proof that there were no large holes in the spark arrester is not satisfying. It is true this spark arrester was placed on the burner only a few months before the fire, and it is generally expected that they will last without material deterioration for about a year and a half. It is also true that two or three witnesses testified that, at the time of the fire, there were no holes in the spark arrester, but their testimony is not very conclusive. One witness made his examination from respondents' house, which was some 250 to 500 feet away from the burner, and manifestly he would not be able to see whether there were holes in the spark arrester. Two other witnesses seem to have made their examination from the ground, and since the burner was 125 feet high, it is manifest that their inspection was not a close one. Another witness made a somewhat careful inspection about two months before the fire, and testified that at that time he did not observe any holes in the netting.

If we are to believe that there were no defects in the spark arrester, then we must disbelieve all the testi-

mony concerning large sparks or burning particles of wood coming therefrom; if we are to believe the large number of witnesses who testified about these sparks, then we must conclude that the spark arrester was not what it should have been.   Manifestly, the trial court and the jury believed the fault was with the burner, and we think they were right.   At any rate, we cannot say the judgment is against the weight of the testimony.

We do not need to consider the alleged error of the trial court in admitting testimony to the effect that the appellants had automatic sprinklers in their plant and that, a day or two after the fire, persons were seen on top of and apparently repairing the spark arrester. This testimony, even if admissible, had but little probative force, and if it be entirely eliminated our conclusion would not be changed.

It is contended that the judgment for $2,000 on account of the fire damage to the house cannot be sustained because the complaint alleged such damage to be only $1,800.   There was ample testimony to support the judgment in this respect, and this being a cause tried to the court, the complaint will be deemed amended to meet the proof.

Complaint is also made concerning the item of $198 on account of the damage to the household furniture, but there is testimony to support even a larger amount of damage in this regard.

The item of $193.63 on account of damage to the drains and sewers is attacked, first, because it is barred by the statute of limitations, and next, because the proof does not support it.   The testimony quite conclusively shows that ashes and half-burnt sawdust would constantly accumulate in the drain troughs and there either solidify and cause the drains to rot, or be washed down into the sewers and stop them up.

There is nothing to show that the trial court gave judgment for any damage on this account which was not recoverable because of the statute of limitations.

It is also contended that the respondents have no right of recovery in any event. This objection is based on the apparent fact that respondents had their house insured and that they received from some insurance company on account of the fire $1,800. At the oral argument, appellants' counsel seemed to concede the weakness of this point. In any event, it is not well taken. *Alaska Pacific Steamship Co. v. Sperry Flour Co.*, 94 Wash. 227, 162 Pac. 26.

The judgment is affirmed.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.