[No. 9258. Department Two. August 10, 1911.]

NELLIE OVERACKER, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

EVIDENCE—EXPERTS—HYPOTHETICAL QUESTIONS—BASIS—INFERENCES. An inference from established facts that a spark had been thrown from a locomotive engine, and set fire to a house 85 to 100 feet from the track, may properly be made the basis of a question to an expert as to whether the spark arrester was in good condition.

RAILROADS—FIRES—EVIDENCE—CAUSE OF FIRE—QUESTION FOR JURY. Evidence that an engine threw sparks some distance large enought to ignite fires, and that a house without any fire in it was within the danger zone and was burned shortly after the passing of the engine, is sufficient to raise a question for the jury as to whether the fire was ignited by a spark from the engine.

RAILROADS—FIRES—CONDITION OF ENGINE—EVIDENCE—SUFFICIENCY. The jury are warranted in finding that an engine is not shown to be in good condition for arresting sparks unless there was an examination of a certain plate, which was the most important feature in the spark arresting device and unsafe if it had holes in it, where the plate could not be examined without taking off the netting, and mechanics had been instructed not to take off the netting except to clean out the nozzle, and this had not been done for some time.

RAILROADS—FIRES—ACTIONS—PLEADING AND PROOF—TITLE TO PROPERTY—PARTIES—CAPACITY TO SUE—AMENDMENT OF COMPLAINT. In an action against a railroad company for setting fire to a house, alleged to belong to the plaintiff, it cannot be objected that the evidence showed. that another owned a life estate therein, where the plaintiff offered to file a stipulation releasing all liability to the life tenant, which was done prior to a verdict by the life tenant, who entered an appearance in the action; and it was not necessary to make the life tenant a party by formal amendment of the complaint, as it will be treated as amended to conform to the proofs.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 17, 1910, upon the verdict of a jury, rendered in favor of the plaintiff, in an action for damages to property by fire. Affirmed.

[1]Reported in 117 Pac. 403.

*C. H. Winders,* for appellant, contended, among other things, that negligence in this class of cases, must be both alleged and proven, and that the plaintiff must sustain the burden of proving the facts alleged. Elliott, Railroads (2d ed.), §§ 1221, 1241; 2 Thompson, Negligence, §§ 2230, 2249; *St. Louis & S. F. R. Co. v. Mathews,* 165 U. S. 1; *Flinn v. New York etc. R. Co.,* 142 N. Y. 11, 36 N. E. 1046; *Henderson, Hull & Co. v. Philadelphia etc. R. Co.,* 144 Pa. St. 461, 22 Atl. 851, 27 Am. St. 652, 16 L. R. A. 300; *Lowney v. New Brunswick R. Co.,* 78 Me. 479, 7 Atl. 381; *Bernard v. Richmond etc. R. Co.,* 85 Va. 792, 8 S. E. 785, 17 Am. St. 103; *Pittsburg etc. R. Co. v. Hixon,* 110 Ind. 225, 11 N. E. 285. Where a fact which must be determined by a jury can be only determined by speculation and conjecture, it is the duty of the trial court to take the case from the jury. *Knapp v. Northern Pac. R. Co.,* 56 Wash. 662, 106 Pac. 190; *Byrne v. Spokane & Inland R. Co.,* 56 Wash. 667, 106 Pac. 191; *Gardner v. Porter,* 45 Wash. 158, 88 Pac. 121; *Wilkie v. Chehalis County Logging & Timber Co.,* 55 Wash. 324, 104 Pac. 616; *Whitehouse v. Bryant Lumber & Shingle Mill Co.,* 50 Wash. 563, 97 Pac. 751. Proof of the starting of a fire shortly after the passing of an engine is not alone sufficient. *Lake Erie & W. R. Co. v. Gossard,* 14 Ind. App. 244, 42 N. E. 818; *Clark v. Grand Trunk Western R. Co.,* 149 Mich. 400, 112 N. W. 1121; *Peffer v. Missouri Pac. R. Co.,* 98 Mo. App. 291, 71 S. W. 1073; *Farley v. Mobile & O. R. Co.,* 149 Ala. 557, 42 South. 747; *St. Louis Southwestern R. Co. v. McIntosh etc.* (Tex. Civ. App.), 126 S. W. 692; *American Ice Co. v. Pennsylvania R. Co.,* 224 Pa. 439, 73 Atl. 873; *Cyle v. Denver & R. G. R. Co.,* 37 Colo. 298, 86 Pac. 1010; *Minneapolis Sash & Door Co. v. Great Northern R. Co.,* 83 Minn. 370, 86 N. W. 451; *White v. New York Cent. & H. R. R. Co.,* 90 App. Div. 356, 85 N. Y. Supp. 497; *Id.,* 181 N. Y. 577, 74 N. E. 1126; *Cincinnati etc. R. Co. v. Sadieville Milling Co.,* 137 Ky. 568, 126 S. W. 118; *Miller-Brent Lumber Co. v. Doug-*

*las,* 167 Ala. 286, 52 South. 414; *Smith v. Northern Pac. R. Co.,* 3 N. D. 17, 53 N. W. 173; *Denver, T & G. R. Co. v. De Graff,* 2 Colo. App. 42, 29 Pac. 664; *Bates County Bank v. Missouri Pac. R. Co.,* 98 Mo. App. 330, 73 S. W. 286; *Shipman v. Chicago etc. R. Co.,* 78 Neb. 43, 110 N. W. 535; *Manning v. Cape Girardeau & C. R. Co.,* 137 Mo. App. 631, 119 S. W. 464; *Finkelston v. Chicago, M. & St. P. R. Co.,* 94 Wis. 270, 68 N. W. 1005. The fact that fires were started at various times along the right of way is no evidence of negligent equipment. Elliott, Railroads, § 1221; Thompson, Negligence, §§ 2230, 2249; *Svea Ins. Co. v. Vicksburg, S. & P. R.,* 153 Fed. 774; *Garrett v. Southern R.,* 101 Fed. 102, 49 L. R. A. 645; *Bernard v. Richmond, F. & P. R. Co.,* 85 Va. 792, 8 S. E. 785, 17 Am. St. 103; *Atlantic Coast Line R. Co. v. Watkins,* 104 Va. 154, 51 S. E. 172; *Pittsburg, C. & St. L. R. Co. v. Hixon,* 110 Ind. 225, 11 N. E. 285; *Henderson, Hull & Co. v. Philadelphia etc. R. Co., supra.* Even if the defendant were required to take the burden upon itself, the defendant in this case, by showing that it had used every modern appliance and used every reasonable care to keep such appliances in repair, overcame the circumstantial evidence and every negative suggestion made by the plaintiff's evidence, entitling it to the judgment asked. *Long v. McCabe & Hamilton,* 52 Wash. 422, 100 Pac. 1016; *Weckter v. Great Northern R. Co.,* 54 Wash. 203, 102 Pac. 1053; *Toledo etc. Co. v. Star Flouring Mills Co.,* 146 Fed. 953; *Menominee River Sash & Door Co. v. Milwaukee & N. R. Co.,* 91 Wis. 447, 65 N. W. 176; *Ragsdale v. Southern R. Co.,* 121 Fed. 924; *Farley v. Mobile & O. R. Co.,* 149 Ala. 557, 42 South. 747; *Woodward v. Chicago, Milwaukee & St. P. R. Co.,* 145 Fed. 577; *Louisville & N. R. Co., v. Marbury Lumber Co.,* 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; *Rosen v. Chicago, Great Western R. Co.,* 83 Fed. 300.

*Edwin H. Flick* (*C. E. Hughes,* of counsel), for respondent, contended, *inter alia,* that in most of the cases cited by appellant, the defendant had established that the spark ar-

resting equipment was in proper condition. See *Flinn v. New York etc. R. Co.,* *Henderson, Hull & Co. v. Philadelphia etc. R. Co.,* *Bernard v. Richmond etc. R. Co.,* *Lake Erie & W. R. Co. v. Gossard,* *Clark v. Grank Trunk Western R. Co.,* *Minneapolis Sash & Door Co. v. Great Northern R. Co.,* *Cincinnati etc. R. Co. v. Sadieville Milling Co.,* *Toledo etc. Co. v. Star Flouring Mills Co.,* *Ragsdale v. Southern R. Co.,* *Woodward v. Chicago, Milwaukee & St. P. R. Co.,* *Louisville & N. Co. v. Marbury Lumber Co.,* and *Rosen v. Chicago Great Western R. Co., supra.* The evidence was competent and sufficient. *Koontz v. Oregon R. & Nav. Co.,* 20 Ore. 3, 23 Pac. 820; *Hawley v. Sumpter R. Co.,* 49 Ore. 509, 90 Pac. 1106, 12 L. R. A. (N. S.) 526; *Kentucky Cent. R. Co. v. Barrow* (Ky.), 20 S. W. 165; *Cleaveland v. Grand Trunk R. Co.,* 42 Vt. 449.

Morris, J.—This action was brought to recover for the destruction by fire of a dwelling house and other property, through the alleged negligence of appellant in operating an engine upon its right of way adjacent to the property destroyed, not properly equipped with spark arrester, and because thereof, emitting sparks of sufficient size and quantity to set fire to respondent's house. Another charge of negligence was in permitting grass and other inflammable material to accumulate along the right of way adjacent to the property destroyed, in which a fire was started by a spark from an engine and the fire communicated to respondent's property. Issue being joined, trial was had, resulting in verdict and judgment for respondent, from which the railway company appeals.

The errors assigned are various rulings of the trial court, upon motions of appellant questioning the sufficiency of the evidence, rulings upon the admissibility of testimony, and a portion of the instruction to the jury. Special interrogatories were submitted to the jury with the verdict, by which they found that the fire was not communicated to the house

from a fire originating in the grass along the right of way, but was started from sparks thrown directly from a passing locomotive to the roof of the house, and that the spark arrester of this locomotive was not in a good condition.

The evidence shows that the burned dwelling was between 85 and 100 feet east of the railway track, which runs north and south; that on the day in question, July 31, 1909, about six o'clock in the evening, the wind was blowing in a general southeasterly direction, which would be diagonally from the track toward the house; that the house had not been inhabited for about two weeks prior to the fire, being locked up during that time, and was found locked at the time of the fire; that during the absence of the owners, the property was in charge of Mrs. Lord, a neighbor, who lived about 150 feet south of respondent's home; the next nearest house was about two blocks from Mrs. Lord's house; that about 5:30 in the evening Mrs. Lord went to respondent's house to gather the eggs and shut up the chickens, putting out the fire in her range before doing so; that she remained a few minutes, and then went back to her own home; that at that time there was no fire in the house or about the premises; that she then started for Houghton, a little hamlet a few blocks away on the west side of the track, along the shore of Lake Washington; that when she reached her front gate, a freight train was passing, and she stopped and waited for it to pass; that the engine was then throwing sparks about 15 feet away; that she walked down the track and saw a fire in the dry ferns and grass along the right of way, from one to two hundred feet north of her house; that when she returned, in about half an hour, respondent's house had burned, and this grass fire had worked its way south to the corner of her front porch, when it was put out. Another witness, Kirkley, testifies to seeing the fire running through the grass on the hill beyond the right of way, a short distance north of respondent's house, and that when he first noticed the fire in respondent's house, it was breaking through the roof under the eaves, about 6:15.

It was also shown that other fires had started on respondent's premises some time before this, and that, about a week before this fire, sparks were thrown from passing engines, some small and some large, that would carry about 70 feet. Other witnesses testify to seeing sparks carry the length of the court room, which is said to be 55 feet. A witness, Hilyer, was asked:

"Where a spark, we will say, had traveled from an engine from 85 to 100 feet and had been of sufficient size and heat when it fell to ignite a house, would you say that the spark arrester in that particular engine was of proper arrangement, modern and in good condition?"

to which answer was made that, if sparks were thrown 50 feet, of sufficient size to ignite a building, there must be holes through the battle plates, or through the netting.

An overruled objection to this question is charged as error. We do no so regard it. It is true, no witness had testified to seeing a spark thrown this distance and ignite this dwelling, but there was evidence which would justify an inference that the fire originated from a spark thrown that distance. A proper inference drawn from established facts is as good a basis to found a hypothetical question upon as the facts themselves. Here we have the testimony of the engine throwing sparks large enough to ignite fire along the right of way and upon the hill beyond the right of way. We have a house within the danger zone to which fire has been communicated at the same time, all other sources having been eliminated. This justifies the inference that the fires had the same origin. To have had the same origin the spark must have been thrown from the engine to the house. The question then naturally follows: Is the spark arrester, permitting sparks to be so thrown, in good condition. The inference was, therefore, based upon a proper conclusion drawn from established facts, and as such, its incorporation in the question was not error. Without further setting forth the testimony, it appears to us that the reference we have made would be suffi-

cient to submit the question to the jury. This disposes of the errors predicated upon the rulings challenging the sufficiency of the testimony.

We should have referred to one other fact present in the case at the time the motions for directed verdict, judgment, and new trial were made. Appellant had put in testimony in regard to the inspection of the spark arresting device of this engine. It is difficult to convey a clear understanding of this device without the aid of diagrams and exhibits, such as were referred to by the various witnesses. The device consists of three deflector plates and a netting, arranged so that the sparks coming from the flues first strike what we will call plate one; from thence they are deflected or thrown against plates two and three, falling downward from plate three; from thence they arise through a wire netting, and thence into the smokestack. Plate one and the netting are opposite each other, so that if there should be a hole in plate one the spark, instead of being deflected to the other plates and thence into the stack through the netting, would pass directly through such a hole into the stack, and in such case it is said property would not be safe 200 feet away from the track. In this netting there is a door used for the purpose of going in to clean out the nozzle, which is done very infrequently, some-times once in six months, sometimes once a year, or longer. The mechanics in the round house were given instructions not to take off this netting door, which is fastened on with bolts, unless it is proposed to clean out the nozzle or make some changes in there. This had not been done in this engine for some time unknown. It also appears that an inspector examining the engine could not determine whether there were any holes in plate one unless this netting door was opened. From this evidence the jury would be justified in concluding that the engine could not be shown to be in good condition, without an examination of plate one, the most important part of the spark arresting device.

The instruction complained of is said to be erroneous be-cause the court therein submits to the jury the question of an imperfect spark arrester and the doctrine of elimination of other causes of fire. This instruction finds support in *Abrams v. Seattle & M. R. Co.*, 27 Wash. 507, 68 Pac. 78, and is therefore sustained. The *Abrams* case is also control-ling upon other disputed points in the case, based upon ap-pellant's plea to the insufficiency of the evidence. In *Min-neapolis Sash & Door Co. v. Great Northern R. Co.*, 83 Minn. 370, 86 N. W. 451, cited by appellant, to the effect that, in cases of this character, it is necessary to go further than to show a mere possibility or conjecture that a passing engine was the source of the fire, it is also said that, "where a train passing through the open country is followed in close proxim-ity of time thereafter by a fire which starts up near its right of way, by a reasonable process of induction based upon the physical facts all other causes of the fire might be excluded and an inference might be justified that the fire was dropped from the smokestack." The case here is much stronger than the illustration given in the Minnesota case, for we are not left to an inference alone, but have direct testimony that the engine was emitting sparks sufficient in size and character to communicate fire to inflammable material upon which they fell, not only upon the right of way, but on the hill 50 feet beyond the right of way, the witness so testifying assuming the right of way to be 100 feet.

There is one more suggestion of error. The complaint described respondent as the owner in fee of the burned dwell-ing, while the evidence showd her title to be subject to a life estate in her mother, Anna Tuttle. When this point was made, respondent produced and made of record the following instrument, signed by the mother and entitled in the cause:

"The undersigned hereby authorizes E. H. Flick [attorney for respondent] to represent her in the case above entitled, and to enter into any stipulation he may see fit in the cause above entitled and to release any and all claims owing or due

me under my life estate in the property at issue in this cause as against the Northern Pacific Railway Company by reason of a fire occurring on July 31st, 1909."

Mr. Flick then stated to the court:

"If Mr. Winders [counsel for appellant] is agreeable, if the jury should find a verdict for the plaintiff, I will stipulate with him and let the record show that all claim of Mrs. Tuttle will be released under the power that I have here;"

to which the court and Mr. Winders seem to have assented.

Subsequent to the verdict, Mr. Flick filed in the cause an assignment of all claim due Mrs. Tuttle under her life estate, by reason of the fire, to respondent, releasing appellant from any liability to Mrs. Tuttle, and entered the appearance of Mrs. Tuttle in the pending action. We think this disposes of appellant's contention that the respondent had no capacity to maintain this action, and that the authority conferred upon Mr. Flick was insufficient without an amendment to the complaint making Mrs. Tuttle a party.

It is apparent from these records that all persons interested in the cause of action are now in court, and that all rights growing out of this cause of action are finally determined herein. *Fireman's Fund Ins. Co. v. Oregon R. & Nav. Co.*, 58 Wash. 332, 108 Pac. 770; *German Fire Ins. Co. v. Bullene*, 51 Kan. 764, 33 Pac. 467; *Davis v. Seattle*, 37 Wash. 223, 79 Pac. 784. True, it does not appear that the complaint has been formally amended, but under the rule in this state that a complaint will be treated as amended to correspond to the proofs, and that an amendment may be had after a cause has been appealed to this court and remanded (*Jones v. Western Mfg. Co.*, 32 Wash. 375, 73 Pac. 359), the complaint will be here treated as so amended, and it is here ordered that a formal amendment be made upon the going down of the remittitur.

The judgment is affirmed.

DUNBAR, C. J., ELLIS, CROW, and CHADWICK, JJ., concur.