[No. 9884. Department Two.    April 30, 1912.]

NORTHWESTERN MUTUAL FIRE ASSOCIATION, *Appellant*, v.
NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*.[1]

RAILROADS—FIRES—CAUSE OF FIRE—NEGLIGENCE—EVIDENCE—SUF-
FICIENCY—PRIMA FACIE CASE. The evidence is sufficient to make a
*prima facie* case of negligence against a railroad company, render-
ing it liable for a fire set out by an engine, where it appears that
the engine hauling a large train of cars and working heavily, emit-
ted an unusual amount of large cinders and sparks that were car-
ried a distance by a strong wind, and that within ten minutes after
the train passed, the roof of a house within reach of the sparks was
discovered to be on fire, there being no fire in the house and no
other explanation of the origin of the fire.

RAILROADS—FIRES—NEGLIGENCE—REBUTTAL OF PRIMA FACIE CASE
—QUESTION FOR JURY. In an action to recover for property destroyed
by a railroad fire, set out by sparks emitted from the engine, it is a
question for the jury to determine whether plaintiff's *prima facie*
case is sufficiently rebutted by defendant's evidence that the engine
in question was equipped with an efficient spark arrester and the
train carefully operated, where it appears that the engine was work-
ing heavily to haul a long train of cars, that the brakes on one of
the cars were firmly set, that the engine was emitting an unusual
amount of large cinders and sparks that were carried a distance by
a strong wind, while the defendant's evidence of inspection of the
spark arrester consisted of defendant's records and the testimony
of employees, the employee who made the inspection not being
called; since this is nothing more than evidence opposed to evidence,
and the credibility of the witnesses was for the jury.

Appeal from a judgment of the superior court for King
county, Main, J., entered March 3, 1911, dismissing an ac-
tion to recover for property destroyed by fire, notwithstand-
ing the verdict of a jury rendered in favor of the plaintiff,
after a trial on the merits.    Reversed.

*Shank & Smith*, for appellant.
*C. H. Winders*, for respondent.

[1]Reported in 123 Pac. 468.

CROW, J.—One Mrs. M. E. Davidson, being the owner of a frame dwelling house and furniture therein, located in the city of Kent, procured from the plaintiff, Northwestern Mutual Fire Association, a policy insuring the same against loss by fire. On October 6, 1909, during the term of the policy, the house and furniture were partially destroyed by a fire, which it is alleged was caused by negligence of the defendant Northern Pacific Railway Company. Plaintiff paid the loss, took from the assured an assignment subrogating it to the assured's claim for damages against the railway company, and commenced this action to recover the same. On trial, a verdict was returned in plaintiff's favor. Thereafter the trial judge granted defendant's motion for judgment *non obstante veredicto*, and dismissed the action. The plaintiff has appealed.

The dwelling house was located about ninety feet east of the railway track upon which respondent operated it trains. The track, and an adjoining street between it and the house, extended in a northerly and southerly direction. Appellant, in substance, alleged that the fire was caused by sparks and cinders emitted from a south-bound locomotive engine which respondent had failed to provide with a suitable spark arrester, or keep in repair, that respondent negligently permitted sparks and cinders to escape from its engine, and that a strong wind carried them towards and upon the house.

Appellant's witnesses testified that, between two and three o'clock, on the afternoon of October 6, 1909, one of respondent's engines, drawing about fifty freight cars, passed towards the south; that the engine was working heavily; that the fireman was shoveling coal into the fire; that he was occasionally seen to put his head through the cab window for a breath of fresh air; that brakes on one of the cars were firmly set, causing the wheels to drag and add to the labor of the engine; that the engine was emitting a large volume of cinders and sparks, which a strong wind carried towards houses east of the track; that within ten minutes after the

engine had passed, a fire was discovered on the roof of the Davidson house; that a little later it fell through the roof upon mattresses and furniture in the second story; that the roof was practically destroyed; that bedding and furniture in the upper story were damaged by fire, smoke and water; that no fire was in the house at the time; and that Mrs. Davidson was not at home. One Keniston, a witness for appellant who lived in another house east of the track, and about one block north, testified, in part, as follows:

"I was inside my own house standing at the window facing the railroad when this train came along and I noticed that the smoke and cinders were blowing towards my house, and the cinders, some of them, were as large as the end of my thumb, red hot. I observed the fireman putting his head through the window apparently for a breath of fresh air. I went out of the house to see that my house did not get fire from those cinders, as it was the first time that I ever saw the cinders fall as large and as thick as at that time. I examined my house to see that it did not catch fire from those cinders, and then I returned to the house inside, and finished paring a few apples, which did not take over five minutes. I then came out of the house and started for the post office which is in an opposite direction from the Davidson house. I went about a half a block, stopped to speak to a neighbor when the fire alarm was sounded, then I discovered it was the Davidson house. I rushed back, took one of my ladders from my house and arrived at the fire, but I cannot say how many people were there, and after I arrived, I noticed the fire was in the roof on the end of the house facing the railroad."

He further testified that he saw the train pass about ten minutes before he heard the fire alarm; that he thought his house was a little nearer the track than was the Davidson house, and that he saw no cinders fall on any house other than his own. Although several witnesses saw sparks and cinders escape from the engine, no one positively testified that he saw cinders fall on the Davidson house, nor did any one testify that they did not fall upon it. Several witnesses testified to seeing the fire on the roof within a very few minutes after the train had passed. Respondent introduced evidence

that the only south-bound freight engine during that after-
noon was No. 498; that it was equipped with a suitable spark
arrester, which had been inspected a few days prior to, and a
few days after the date of the fire, and was reported in ex-
cellent repair.   The proof of inspection was made by a record
produced by respondent; but a former employee who in-
spected the engine and made the record was not produced as
a witness, his place of residence being unknown to respondent
at the date of the trial.   The engineer who operated the en-
gine produced his original work report and testified that the
engine was in good repair on October 6, 1909, that it was
operated in the usual manner; that it did not throw any
more sparks than usual; that no spark-arresting device had
been made which would retain all sparks; that the train he
took out of Kent consisted of fifty empty bad order freight
cars which were being taken to the South Tacoma shops, and
that he did not learn of the fire until about the date of the
trial.   None of this evidence was disputed by appellant.

Appellant insists that its evidence made a *prima facie* case
of negligence sufficient to shift to respondent the burden of
showing that its engine and spark arrester were in good re-
pair, that the engine was properly operated and that re-
spondent exercised due care.   It also contends that, upon all
the evidence, it was for the jury to determine whether re-
spondent had been negligent, and whether it had successfully
overcome the *prima facie* case made by appellant.   Respond-
ent, in substance, contends, (1) that the cause of the fire was
a matter of mere conjecture, (2) that negligence on its part
was not proven, and (3) that conceding appellant by its evi-
dence made a *prima facie* case as to the origin of the fire, yet
the burden of proof would not then shift to respondent, but
respondent would only be required to show that it had used
reasonable care in the equipment and operation of its engine;
that when it had done so, and had thus disposed of appellant's
*prima facie* case, the burden still rested upon appellant to sus-
tain its charge of negligence, which it failed to do, and that

it was the duty of the trial judge to so hold, as a question of law.

The first question presented for our determination is whether appellant made a *prima facie* case of negligence against respondent. We conclude that it did. In *Abrams v. Seattle & Montana R. Co.*, 27 Wash. 507, 68 Pac. 78, we said:

"There was no direct evidence that the fire was started by the appellants' engine, nor was it discovered burning upon the right of way previous to the discovery of the smoke arising from the roof of the barn. It was in evidence, however, that there was no fire upon the premises prior to the passage of the engine, and no other known source from which the fire could probably have originated. From this record we have no hesitancy in saying that, to our minds, the evidence justifies the finding of the jury, not only that the fire which caused the injury escaped from the passing passenger engine, but that it caught first in the inflammable debris, and spread from thence to the respondent's barn. The respondent was not obligated to prove these facts by the direct evidence of an eyewitness, nor by proofs which would leave them beyond the possibility of a doubt. It was sufficient if he established them by the proof of circumstances which lead reasonably to their inference, and which ordinarily satisfies an unprejudiced mind of their truth."

The evidence now before us leads reasonably to the inference that the fire was caused by sparks from respondent's engine. Respondent attempts to distinguish the *Abrams* case, and other cases decided by this court, by calling attention to the fact that, in the cases mentioned, inflammable debris was on the right of way, a fact not shown in this record. The evidence here does show that the engine was working heavily; that it was emitting large cinders and sparks which were carried towards the house by a strong wind; that within a few minutes the fire was discovered; and that no other cause for the fire has been suggested or shown. These facts are sufficient to sustain the finding of the jury. *Asplund v. Great Northern R. Co.*, 63 Wash.

164, 114 Pac. 1043 ; *Fireman's Fund Ins. Co. v. Oregon R. &*
*Nav. Co.*, 58 Wash. 332, 108 Pac. 770 ; *Noland v. Great*
*Northern R. Co.*, 31 Wash. 430, 71 Pac. 1098 ; *Wick v.*
*Tacoma Eastern R. Co.*, 40 Wash. 408, 82 Pac. 711 ; *Over-*
*acker v. Northern Pac. R. Co.*, 64 Wash. 491, 117 Pac. 403 ;
*Thorgrimson v. Northern Pac. R. Co.*, 64 Wash. 500, 117
Pac. 406.

In a foot note to the case of *Atchison etc. R. Co. v. Geiser*,
1 Am. & Eng. Ann. Cases, the annotator, at page 815, says :

"In England and in many of the states of the Union, it is
held that the mere fact of communication of fire by a rail-
road engine is, of itself, sufficient to raise a presumption of
negligence against the railroad company, or, in other words,
that proof of such communication is sufficient to make out
a *prima facie* case of negligence against the defendant in
an action for injuries caused by the fire."

After supporting this statement by citing numerous cases,
the annotator, at page 816, further says :

"In some jurisdictions this doctrine is the result of ex-
press legislative enactment, or is, at least, sanctioned by
statute.   Such, as will appear from the decisions above
cited from those states, is the case in Arkansas, Illinois,
Iowa, Kansas, Maryland, Michigan, Minnesota, Mississippi,
New Jersey, North Dakota, Ohio, Utah, and Vermont.   But
in many, if not all, of the other states from which decisions
are cited above, the rule has been adopted irrespective of
statute ; and in a number of cases it has been expressly stated
that the principle is one of the common law, and not de-
pendent upon legislative enactment."

This statement, which is in harmony with our own de-
cisions, is also supported by additional citations of authority
from North Carolina, South Dakota, and Tennessee.

As above stated, respondent further contends that, even
though the evidence offered by appellant be held sufficient
to make a *prima facie* case of negligence on respondent's
part, so as to require respondent to offer proof in rebuttal,
the undisputed evidence which it offered so completely over-
came and disposed of appellant's case that it was the duty

of the trial judge to direct a judgment of dismissal. This would be an unauthorized invasion of the province of the jury. Respondent's showing which it made was nothing more than evidence opposed to evidence. It was made through the medium of respondent's records and the testimony of witnesses who were respondent's employees. It was for the jury to pass upon the credibility of the witnesses, and determine whether this evidence was sufficient to rebut the *prima facie* case made by appellant. In *McCullen v. Chicago & N. W. R. Co.*, 101 Fed. 66, 49 L. R. A. 642, the United States circuit court of appeals for the eighth circuit, said:

"When the plaintiff offered evidence which was sufficient to raise a presumption of negligence, it was the province of the jury to decide whether the defendant's rebutting proof was adequate to overcome that presumption. As was said, in substance, by the supreme court of Minnesota, in *Karsen v. Milwaukee & St. P. R. Co.*, 11 N. W. 122, a jury is not necessarily bound to accept as conclusive the statement of a witness that an engine was in good order, or carefully and skilfully operated, although there is no direct evidence contradicting the statement. They have a right to consider all the evidence and circumstances bearing upon the condition and mode of operating the engine, as well as the circumstances under which the fire took place. Moreover, if the jury were satisfied, and so found, that the mill was ignited by a spark which came from one of the defendant's locomotives, it may well be that this fact alone would have led them to discredit the statements of the defendant's witnesses concerning the condition of the locomotives and how they were handled, and the right of the jury to discredit them for that reason cannot be denied. *Greenfield v. Chicago & N. R. Co.*, 83 Iowa 270, 276, 49 N. W. 95. We are of opinion that the correct view is that, when the evidence which is offered by a plaintiff to make out his cause of action creates a presumption of negligence, the case should be submitted to the jury, unless the rebutting evidence is so clear and circumstantial that no reasonable person could doubt its verity."

Although a sharp conflict of authority exists, numerous courts of last resort have held it is for the jury, and not for

the court, to determine in such cases as this whether the defendant's evidence is sufficient to overcome the *prima facie* presumption of negligence raised by the fact of the communication of the fire. *Chenoweth v. Southern Pac. Co.,* 53 Ore. 111, 99 Pac. 86; *Tuttle v. Missouri Pac. R. Co.* (Kan.), 119 Pac. 370; *Taffe v. Oregon R. & Nav. Co.* (Ore.), 117 Pac. 989; *St. Louis, I. M. & S. R. Co. v. Dawson,* 77 Ark. 434, 92 S. W. 27.

In *St. Louis, I. M. & S. R. Co. v. Coombs,* 76 Ark. 132, 88 S. W. 595, the court said:

"So the case stands thus: From the fact that the engine passed near the building a few minutes before the fire, and that its origin cannot be accounted for upon any other theory, a conclusion is warranted that it was communicated from the engine; and it is shown by said agents of appellant that a spark arrester of approved pattern, in good condition, such as is in common use, will not emit sparks of sufficient size to ignite inflammables. Against this the witness introduced by appellant testified, without contradiction by direct testimony, that the engine was provided with a spark arrester of the most approved kind in use. Therefore, when it was established that fire had been communicated from the engine, and there was testimony tending to show that an engine equipped with proper appliances and operated with due care would not emit sparks of sufficient size to ignite inflammable material, the jury were warranted in finding either that the engine was not so properly equipped, or that it was not operated with due care, and that appellant had not rebutted the presumption of negligence raised against it. Upon this state of the proof it cannot be said that the verdict of the jury was without evidence sufficient to support it."

The verdict was for $271.10, the entire amount demanded by appellant. Without discussing the evidence, we announce our conclusion that it was sufficient to sustain this verdict, notwithstanding respondent's earnest contention to the contrary. The judgment is reversed, and the cause is remanded with instructions to deny the respondent's motion for judgment *non obstante veredicto.*

Dunbar, C. J., Morris, and Ellis, JJ., concur.