[No. 13872.   Department One.   May 2, 1917.]

FIREMEN'S FUND INSURANCE COMPANY, *Respondent*, v.
OREGON-WASHINGTON RAILROAD & NAVIGATION
COMPANY, *Appellant*.[1]

RAILROADS—FIRES—CAUSE OF FIRE—NEGLIGENCE—EVIDENCE—SUF-
FICIENCY.   In an action against a railroad company to recover for
the loss by fire of a field of wheat, the question is one of fact for
the jury, where there was evidence to the effect that the fire orig-
inated one hundred and forty feet from the track, shortly after the
passing of a train up a steep grade, that the locomotive was work-
ing heavily and emitting hot sparks, the fire was discovered only a
few minutes afterwards, and there was no other known cause, and
experts testified that engines properly equipped and operated would
not throw live cinders a distance of one hundred and forty feet; and
the defendant was not entitled to a directed verdict from the fact
that the company introduced evidence to the effect that the engine
was in good condition and carefully and skillfully operated.

SAME.   In such a case, where all the evidence was to the effect
that the engine had been equipped with the best known appliances
on the market for the purpose of arresting sparks, that question
should not be submitted to the jury; but the case should have been
permitted to go to the jury upon the questions made by the evidence
as to the proper adjustment of the appliances and operation of the
engine.

SAME — FIRES — DEGREE OF CARE — INSTRUCTIONS.   In an action
against a railroad company for the destruction of property by fire
originating from sparks from the engine, it is error to instruct that
the company owes the highest degree of care in the operation of its
locomotive consistent with the practicable conduct of its business;
the standard of care being ordinary and reasonable care, in the light
of the attending circumstances and surroundings.

TRIAL—INSTRUCTIONS—INCONSISTENCY.   Where instructions to the
jury are inconsistent and contradictory upon a material point, the
error must be regarded as prejudicial.

Appeal from a judgment of the superior court for Walla
Walla county, Mills, J., entered April 18, 1916, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
in tort.   Reversed.

[1]Reported in 164 Pac. 765.

*Evans & Watson, A. C. Spencer,* and *W. A. Robbins,* for appellant.

*O. C. Moore,* for respondent.

WEBSTER, J.—This is an action brought by the Firemen's Fund Insurance Company against the Oregon-Washington Railroad & Navigation Company to recover damages for the alleged negligent burning of a field of grain located near Boles Station, in this state. Plaintiff alleged, in substance, that it is a fire insurance company and, prior to the fire in question, had insured the grain which was destroyed; that thereafter it paid the owner of the grain the amount of the loss, and, by reason thereof, was subrogated to whatever rights the owner may have had against the defendant company; and that the company was guilty of negligence, in that it caused sparks and cinders to be emitted from its locomotive, thereby setting fire to the wheat field. The defendant denied any negligence on its part and affirmatively pleaded that, on July 26, 1915, the day on which the fire occurred, one of defendant's east-bound passenger trains, drawn by engine No. 262, passed through Boles Station at about the hour of 10:40 a. m.; that this was the only locomotive of the defendant passing in that vicinity for a considerable time prior to the discovery of the fire; that locomotive No. 262 was of first-class construction, was equipped with suitable and proper spark arresting apparatus, which was in place and in good repair; and that the engine was carefully and skillfully operated. The affirmative matter in the answer was denied by the reply. Upon the issues thus joined, the cause was tried to a jury, which returned a verdict in favor of plaintiff. From the judgment entered upon the verdict, the defendant appeals.

At the conclusion of the testimony, the defendant moved the court for a directed verdict in its favor upon the ground of the insufficiency of the evidence. The motion was denied, and this ruling is assigned as error. Counsel for defendant

contend that it was necessary for the plaintiff to prove that the fire originated near defendant's right of way soon after the locomotive had passed the field, and that, under all the circumstances, it was more probable that the fire originated from its locomotive than from any other cause; that this showing would give rise to a *prima facie* presumption of negligence and render it incumbent upon the defendant to go forward with the testimony and show, if it could, that its locomotive was properly equipped, maintained and operated at the time the fire is alleged to have been set out, and that, in this case, the defendant made such showing; that, after the defendant had produced such testimony, it then devolved upon plaintiff to again go forward with the testimony and produce evidence tending to show that the defendant was guilty of actual, as distinguished from presumptive, negligence in the equipment or operation of the locomotive, and that the plaintiff failed to introduce such evidence.

The record discloses that plaintiff introduced testimony to the effect that the fire originated in the wheat field about 140 feet from the center of the railway track and about 800 feet from Boles Station, at which the locomotive had stopped; that the track from the station to a point immediately in line with the place in the field where the fire was discovered, and beyond, was up a steep grade; that the locomotive was working heavily and was emitting large volumes of smoke, soot and cinders; that hot embers or sparks struck the harvesters at work in the field; that the effect of their heat as they lit on the men and on the backs of the teams was noted at the time. For example, one witness testified: "As the train passed, it threw out quite a few cinders and most of them were pretty hot. I had my shirt open and they went down my back, and I had a mule that was clipped, and on his back and shoulders, when they fell on him, I noticed a burn or two where it kind of scorched the hair." It was also shown that the fire was discovered only a few minutes after the locomotive had passed; that none of the men in the field were smoking or carrying

matches, and that there was no other known cause for the fire. An experienced locomotive engineer testified in behalf of plaintiff that an engine properly equipped and operated would not throw live cinders a distance of 140 feet, and the engineer in charge of engine No. 262, at the time the fire is alleged to have been started, testified on cross-examination that, if the fire was set out by his engine in the manner claimed by plaintiff, it would indicate either that something was wrong with the locomotive or that it was not operated in a proper manner.

These facts bring the case squarely within the rule announced by this court in *Northwestern Mut. Fire Ass'n v. Northern Pac. R. Co.*, 68 Wash. 292, 123 Pac. 468, Ann. Cas. 1913E 968. In that case the railway company introduced evidence to the effect that the engine there charged with having caused the fire was equipped with a suitable spark arresting device which was in excellent state of repair; that the engine was in first-class condition in all respects, and that it was carefully and skillfully operated. A verdict was rendered in favor of the plaintiff. A motion for judgment notwithstanding the verdict was granted. In reversing the judgment, the court said:

"Appellant insists that its evidence made a *prima facie* case of negligence sufficient to shift to respondent the burden of showing that its engine and spark arrester were in good repair, that the engine was properly operated and that respondent exercised due care. It also contends that, upon all the evidence, it was for the jury to determine whether respondent had been negligent, and whether it had successfully overcome the *prima facie* case made by appellant. Respondent, in substance, contends, (1) that the cause of the fire was a matter of mere conjecture, (2) that negligence on its part was not proven, and (3) that conceding appellant by its evidence made a *prima facie* case as to the origin of the fire, yet the burden of proof would not then shift to respondent, but respondent would only be required to show that it had used reasonable care in the equipment and operation of its engine; that when it had done so, and thus disposed of appellant's

*prima facie* case, the burden still rested upon appellant to sustain its charge of negligence, which it failed to do, and that it was the duty of the trial judge to so hold, as a question of law.

"The first question presented for our determination is whether appellant made a *prima facie* case of negligence against respondent. We conclude that it did. In *Abrams v. Seattle & Montana R. Co.*, 27 Wash. 507, 68 Pac. 78, we said:

" 'There was no direct evidence that the fire was started by the appellants' engine, nor was it discovered burning upon the right of way previous to the discovery of the smoke arising from the roof of the barn. It was in evidence, however, that there was no fire upon the premises prior to the passage of the engine, and no other known source from which the fire could probably have originated. From this record we have no hesitancy in saying that, to our minds, the evidence justifies the finding of the jury, not only that the fire which caused the injury escaped from the passing passenger engine, but that it caught first in the inflammable debris, and spread from thence to the respondent's barn. The respondent was not obligated to prove these facts by the direct evidence of an eyewitness, nor by proofs which would leave them beyond the possibility of a doubt. It was sufficient if he established them by the proof of circumstances which lead reasonably to their inference, and which ordinarily satisfies an unprejudiced mind of their truth.'

"The evidence now before us leads reasonably to the inference that the fire was caused by sparks from respondent's engine. Respondent attempts to distinguish the *Abrams* case, and other cases decided by this court, by calling attention to the fact that, in the cases mentioned, inflammable debris was on the right of way, a fact not shown in this record. The evidence here does show that the engine was working heavily; that it was emitting large cinders and sparks which were carried towards the house by a strong wind; that within a few minutes the fire was discovered; and that no other cause for the fire has been suggested or shown. These facts are sufficient to sustain the finding of the jury. . . .

"As above stated, respondent further contends that, even though the evidence offered by appellant be held sufficient to make a *prima facie* case of negligence on respondent's part,

so as to require respondent to offer proof in rebuttal, the undisputed evidence which it offered so completely overcame and disposed of appellant's case that it was the duty of the trial judge to direct a judgment of dismissal. This would be an unauthorized invasion of the province of the jury. Respondent's showing which it made was nothing more than evidence opposed to evidence. It was made through the medium of respondent's record and the testimony of witnesses who were respondent's employees. It was for the jury to pass upon the credibility of the witnesses and determine whether this evidence was sufficient to rebut the *prima facie* case made by appellant."

The evidence in the case before us is more strongly in favor of the plaintiff than it was in the case from which we have just quoted. The question presented was one of fact for the determination of the jury, and the ruling of the trial court denying the motion for a directed verdict was clearly right.

Defendant assigns numerous errors based upon the instructions of the court defining the duty resting upon defendant to equip its locomotives with approved appliances to prevent the escape of sparks and cinders. As we read the record, and in view of the fact that the judgment must be reversed upon another point, it will not be necessary to consider these assignments.

At the trial, defendant introduced evidence to the effect that engine No. 262, at the time in question, was equipped with a master mechanic's front end, which was one of the best known devices for arresting sparks, and that it was supplied with a seven-by-seven netting, which is the finest netting that it is practicable to use on a locomotive. Plaintiff's only expert on this point testified that he was familiar with the master mechanic's front end spark arrester, and that he knew of no better device on the market, and that a netting three-by-three would be proper equipment, a three-by-three netting being of much larger mesh than one seven-by-seven. Consequently there was no dispute or conflict in the testimony as

to the character of the appliance with which the engine was equipped. The sole issues for the consideration of the jury were whether the fire had been set out by defendant's locomotive and, if so, whether the spark arresting appliances, at the time, were properly adjusted, in place, and in good repair, and whether the locomotive was carefully and skillfully operated.

There is evidence in the record that the adjustment of the deflector plate in the spark arresting apparatus and the position of the diaphragm or draft plates were matters to be taken into consideration in determining whether a locomotive is properly equipped to prevent the escape of sparks. As we have already said, the engineer in charge of the locomotive testified that, if the fire was set out in the manner claimed by plaintiff, it would indicate either that something was wrong with the engine or with the manner in which it was operated, and plaintiff's expert testified that a locomotive properly equipped, adjusted and operated would not throw sparks or live cinders a distance of 140 feet. *Overacker v. Northern Pac. R. Co.*, 64 Wash. 491, 117 Pac. 403; *Chicago & E. R. Co. v. Ohio City Lumber Co.*, 214 Fed. 751.

There being no conflict in the evidence as to the character of the spark arresting device with which the engine was equipped; that is, there being no contention that it was not a suitable and proper device, but all of the evidence agreeing that it was the best known appliance on the market for the purpose for which it was designed, that question should not have been submitted to the jury. But the case should have been permitted to go to the jury upon the questions of whether the locomotive in fact caused the fire and, if so, whether the defendant was guilty of negligence in failing to exercise ordinary and reasonable care and caution in properly adjusting the appliance and keeping it in repair, and whether the locomotive, at the time, was operated with ordinary and reasonable care and skill.

In its charge to the jury, the trial court instructed in part as follows:

"It is the duty of a railroad company to equip its locomotives with approved mechanical inventions and appliances to prevent the escape of sparks, fire and cinders therefrom, and to exercise reasonable diligence and precaution in keeping such equipment in place and proper repair. And it is the further duty of a railroad company to exercise *the highest degree of care in the operation of its locomotives consistent with the practicable conduct of its business,* and likewise to employ and provide competent, skillful and careful men to operate same."

Defendant complains of this instruction upon the ground that it imposed upon the company a higher degree of care in the premises than the law sanctions. It will be seen that the jury was instructed that it was the duty of defendant to exercise the highest degree of care in the operation of its locomotives consistent with the practical conduct of its business, and to exercise the same degree of care in employing and providing competent and skillful men to operate the same. This is not the law. The instruction imposed upon defendant the duty to exercise the same degree of care exacted by law of carriers of passengers. The law, in its tender regard for human life and limb, holds railway companies as carriers of passengers to the exercise of the highest degree of care and caution consistent with the practical operation of the business in which they are engaged, but in a case such as is now before us, the defendant is required only to exercise ordinary care and caution. Ordinary or reasonable care, in a case of this kind, is unquestionably a high degree of care, because the risk of injury when care is not observed is very great. In this, as in all cases of negligence, the degree of care must be commensurate with, and corresponding to, the danger incident to the failure to exercise care. It is, however, only that degree of care which an ordinarily careful and prudent person engaged in the same business would exercise under similar

circumstances and conditions.   The standard of care is ordinary and reasonable caution.   But whether this standard is observed depends upon the attendant facts of the particular case.   *Abrams v. Seattle & Montana R. Co.,* 27 Wash. 507, 68 Pac. 78.

Thompson in his Commentaries on the Law of Negligence, vol. 2, §§ 2232 and 2233, announces the rule supported by the great weight of authority in this language:

"The modern law has so far departed from ancient conceptions that, instead of the railroad company being liable as an insurer against damages arising from its use, it is liable only for what the books describe as reasonable or ordinary care, which may be said to mean, in this connection, the care which will under given circumstances be exercised by a competent specialist having a due regard for the rights of others. But for the lack of this measure of care it is liable.   In the absence of a statute making it such, it is not an insurer against loss by fire of all the combustible property situated along the line of its road, but is required to exercise only such care and caution in providing machinery, in the employment of agents in operating its road, and in caring for its right of way, as an ordinarily prudent person would exercise under all the circumstances if all the property to be affected belonged to himself.   This obligation to use reasonable or ordinary care includes the obligation to use reasonable care and skill in the *construction of its locomotives,* by the adoption of approved appliances to prevent the escape of fire or sparks therefrom; to use reasonable care in keeping them in repair; to use reasonable care and skill in operating and managing such locomotives while running; to use reasonable care in preventing the accumulation of combustible materials along its right of way; to use reasonable care in arresting the spread of fires which have been communicated from its locomotives or which have been otherwise set by its servants on its right of way, or by strangers; and to use reasonable efforts to extinguish fires set by its locomotives, by its employes, or spreading from its right of way, no matter by whom set, after such fires have reached the premises of others.

"The degree of care which it is required to exercise in all these cases is, as in other cases, *proportioned to the danger*

accruing to third persons from the failure to exercise care. In other words, here, as in other cases, what the law regards as reasonable care is a care proportioned to the risk; and it may, in some cases, require a .high degree of skill and the most exact and unremitting attention and diligence, while in other cases, where the danger is remote, it will be satisfied with less skill and with a less exact and sustained degree of attention."

The trial court, in other portions of the charge to the jury, properly defined the degree of care resting upon the defendant, but the vice in the instructions is that they are absolutely contradictory and inconsistent. In one place the jury is told that the defendant must exercise the highest degree of care consistent with the practical conduct of its business, and in other places in the charge it is told that the defendant need only exercise ordinary and reasonable care in the light of the attending circumstances and surroundings. The instructions are irreconcilable and set up for the guidance of the jury contradictory rules pertinent to a material and vital issue in the case. Under such circumstances, it is impossible for the court to say which instruction the jury followed. One of the instructions was erroneous, and it may be the jury followed that one. The instructions being thus inconsistent and contradictory upon a material and pivotal point in the case, the error must be regarded as prejudicial, requiring a reversal. *Dunn v. Puget Sound Traction, Light & Power Co.,* 89 Wash. 36, 153 Pac. 1059; *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331; *Paysse v. Paysse,* 84 Wash. 351, 146 Pac. 840; *Mosso v. Stanton,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943; *Gage v. Springston Lumber Co.,* 47 Wash. 141, 91 Pac. 558; *Elderkin v. Peterson,* 8 Wash. 674, 36 Pac. 1089; *Miller v. Vermurie,* 7 Wash. 386, 34 Pac. 1108, 35 Pac. 600.

The assignments of error not referred to or discussed in this opinion have been noticed and are considered to be without merit.

The judgment is reversed, and the cause remanded for a new trial not inconsistent with this opinion.

Ellis, C. J., Morris, Main, and Chadwick, JJ., concur.